[Cite as *Palnik v. Crane*, 2019-Ohio-3364.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

MATTHEW PALNIK,                          :

    Plaintiff-Appellant,                  :

                                           No. 107400

    v.                                    :

KRISTEN CRANE,                           :

    Defendant-Appellee.                   :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART
                AND REMANDED
**RELEASED AND JOURNALIZED:** August 22, 2019

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-15-357079

---

### *Appearances:*

Lipson O'Shea Legal Group, and Michael J. O'Shea, *for appellant.*

Stafford Law Co., L.P.A., Joseph G. Stafford, and Nichole A. Cruz, *for appellee.*

EILEEN T. GALLAGHER, P.J.:

{¶ 1} Plaintiff-appellant, Matthew Palnik ("Husband"), appeals the decision of the Cuyahoga County Court of Common Pleas, Division of Domestic

Relations, finding him in civil contempt of a temporary support order. He raises the following assignments of error for review:

1. The temporary support order was not based upon Ohio law and violated federal law.

2. The trial court's failure to hold a modification hearing in the time required by Ohio Civ.R. 75(N) violated Ohio law.

3. Ohio law permits the modification of a temporary support order at anytime.

4. There was no proof that the show cause motions were served according to Ohio Civ.R. 4.1, et seq.

5. Defendant's contempt motions and the evidence introduced at the hearing, did not comply with Loc.R. 20 of the Cuyahoga County Domestic Relations Court.

6. Husband clearly demonstrated an inability to completely comply with the temporary support order.

7. The trial court placed impossible and/or unconscionable terms on Husband to purge the contempt.

{¶ 2} After careful review of the record and relevant case law, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

## I. Procedural History

{¶ 3} Husband and defendant-appellee, Kristen Crane ("Wife"), were married on November 25, 2006. They have two minor children together. In May 2015, Husband filed a complaint for divorce and a motion for temporary support, with an accompanying affidavit. In response, Wife filed an answer brief and a counter motion for temporary support, with an accompanying affidavit.

{¶ 4} The trial court held hearings on July 1, 2015, October 2, 2015, and October 29, 2015, to address the issue of temporary support. The matter was scheduled to resume on April 6, 2016, to provide Husband the opportunity to re-cross-examine Wife "on the issues associated with the temporary support and temporary parenting plan." However, on March 28, 2016, Husband filed a motion waiving his right to present further evidence on the issue of temporary support. The motion further requested the trial court to issue the "long-overdue temporary support and temporary parenting orders."

{¶ 5} On April 25, 2016, the trial court issued a temporary support order. In relevant part, the trial court found that "[Husband] is a self-employed attorney and for the purposes of temporary support [Husband]'s gross annual income from all sources is $360,000 and [Wife] is a W-2 employee and her annual gross income is $80,000." Upon consideration of the factors set forth under R.C. 3105.18(C)(1), including "the disparity in income" and the "need to maintain status quo," the court ordered Husband to "pay spousal support to [Wife] in the sum of $9,000 per month, plus 2% processing." In addition, the trial court ordered Husband to pay child support in the amount of $2,222 per month. Finally, the court ordered Husband to pay Wife certain expenses, including (1) household expenses for cable television, telephone service, and internet service; (2) Wife's lease payments for her vehicle; (3) work-related childcare for the children; (4) Wife's auto-insurance payments; and (5) health insurance coverage.

{¶ 6} On April 28, 2016, just three days after the temporary support order was issued, Husband filed a motion to modify the temporary support order. In the motion, Husband argued the trial court's judgment was not based upon his current income and expenses for the year 2016. In an attached affidavit, Husband estimated that his 2016 income would be approximately $100,000 lower than the amount relied on by the trial court. Thus, Husband alleged, "given [his] current income and expenses," that he "[did] not have the income to comply with the Divorce Case April 25, 2016 temporary support order and also support myself."

{¶ 7} In October 2017, the trial court held a two-day hearing to address Husband's motion to modify the temporary support order. Ultimately, the trial court "dismissed" the motion to modify temporary support, finding that Husband (1) failed to authenticate the 2016 tax returns referenced in support of his modification request; and (2) failed to demonstrate a change of circumstances. Following the trial court's judgment, Husband filed a second motion to modify the temporary support order on November 1, 2017.

{¶ 8} During the pendency of the litigation, Wife filed separate motions to show cause on June 27, 2016, September 16, 2016, February 2, 2017, and May 1, 2018. In each motion, Wife alleged that Husband had failed to abide by the terms of the April 25, 2016 temporary support order. Hearings were held to address Wife's pending motions to show cause on May 7, 2018, and May 11, 2018.

{¶ 9} At the hearing, defense counsel called Husband as a witness as if on cross-examination. At the onset of his testimony, Husband was presented with

copies of the four motions to show cause. At that time, plaintiff's counsel objected to the reference to the show-cause motion filed on May 1, 2018. Counsel maintained that the motion was not properly before the court because it had not been served in compliance with the Ohio Rules of Civil Procedure. Following a brief discussion on the record, the trial court overruled the objection and permitted defense counsel to question Husband about the specific allegations set forth in the May 1, 2018 show-cause motion.

{¶ 10} Regarding the arguments set forth by Wife in each motion to show cause, Husband testified that he was aware of the temporary spousal support order and its mandates. He agreed with defense counsel that he knowingly failed to comply with the specific requirements of the court order. Husband was presented with records from the Cuyahoga County Child Support Enforcement Agency ("CSEA"), which reflected that he owed arrearages in the amount of $159,960.80. Husband did not dispute the record or the amount reflected as due and owing.

{¶ 11} Wife provided testimony in support of her show-cause motions. When presented with copies of her motions to show cause, Wife stated that Husband continuously failed to comply with the court's order to pay certain "extracurricular/medical" expenses and various household expenses, including telephone, internet, and cable bills, child-care expenses, and monthly lease payments for Wife's personal vehicle. In addition, Wife testified that Husband failed to make all required child support and spousal support payments. She conceded that Husband had been paying "approximately $3,000 a month." However, she

emphasized that he still owes an unpaid balance of support in the amount of $159,960.80. Wife opined that Husband "has the ability to pay the court order," and that a finding of contempt for Husband's noncompliance was appropriate because Husband would never comply with the court order "unless there's a penalty."

{¶ 12} In the midst of the cross-examination of Wife, counsel for Husband attempted to challenge the merits of the underlying temporary support order. Reiterating many of the arguments previously raised in the dismissed motion to modify, counsel argued that the temporary support order is "fundamentally inequitable in violation to a certain degree of federal law." Counsel asserted that Husband was "essentially [made] to pay close to 130, 140,000 dollars a year" when "the evidence will show he made just around 200,000 [dollars] in 2016." Counsel further argued that the insufficiency of the temporary support order was relevant to the contempt proceedings and his current ability to comply with the order, stating:

> Now why this is all important, Judge, for the purposes you have what we're here for today because Ms. Wife and/or her lawyer seek to have this man incarcerated, Judge, found in contempt because he cannot meet an order that the math will clearly show you, and had in fact, shown you he cannot meet, that essentially consumes more than 50 percent of his gross pretax income.

When given the opportunity to respond, defense counsel challenged Husband's credibility, suggesting that his total earnings "could be subject to manipulation" because Husband is "a self-employed person."

{¶ 13} Upon resuming cross-examination, Wife stated that she had no knowledge of Husband's income for the year 2016. However, she conceded that

prior to the hearing on Husband's motion to modify the temporary support order, Husband's personal accountant, Frank Krempasky, sent her a draft of Husband's 2016 tax return in order to determine whether the parties wished to file their taxes jointly or individually. Wife testified that she told Krempasky that she "did not have faith in the information reported on a federal and state return and therefore needed to speak with [her] attorney." Wife further conceded that CSEA records reflect that from June 1, 2016 to May 6, 2018, Husband paid $131,185.32 towards his temporary support obligation.

{¶ 14} Husband then testified on his own behalf. Husband provided extensive testimony concerning his employment as an attorney and the unpredictable nature of his annual income under the payment structure utilized by his law firm. Husband explained that pursuant to his partnership agreement, when one of the partners "draws against [their] respective operating account," the other partner is entitled to 20 percent of those funds. Husband was presented with the parties' federal and state joint-tax returns for the years 2014 and 2015. For the year 2014, Husband confirmed that Wife's salary was $80,000, and that his Schedule C income was $13,259, and his Schedule K-1 income was $373,112. For the year 2015, Husband confirmed that Wife's salary was $80,000, and that his Schedule C income was $3,512, and his Schedule K-1 income was $360,015.

{¶ 15} When questioned about the spike in his income during 2014 and 2015, Husband explained that he inherited approximately 400 workers' compensation cases from a retired colleague. He indicated that at the time the

temporary spousal support was issued in April 2016, his annual income at that time was no longer $360,000. In an effort to corroborate Husband's testimony, counsel introduced Husband's 2016 federal tax return. Viewing his "Two Year Comparison Report" for the years 2015 and 2016, Husband testified that while his total "partnership/S Corp. income" for the year 2015 was $360,015, his total "partnership/S Corp. income" for the year 2016 was only $183,177 — a reduction of income in the amount of $176,838. Taking in consideration the increase in Husband's "business income" of $26,013 in 2016 versus his "business income" of $3,512 in 2015, the exhibit reflects that Husband's "total income" income was $363,574 in 2015, and $209,252 in 2016 — a difference of $154,322. (Plaintiff's exhibit No. NNN-2.) Counsel also introduced Husband's 2016 state tax return, which designated Husband's adjusted gross income as being $120,870. (Plaintiff's exhibit No. OOO.) Husband testified that the 2016 tax returns accurately reflected his income for the year 2016 and that the exhibits reflected the "actual tax return[s]" he filed for the year 2016.

{¶ 16} At the time of the contempt hearing, Husband had yet to file his 2017 tax returns. However, counsel introduced a draft IRS Schedule K-1 for the year 2017 that reflected Husband's "self-employment earnings" in the amount of $248,055. (Plaintiff's exhibit No. SSS.)

{¶ 17} Husband confirmed that the CSEA records accurately represented the amount of spousal support payments he has made since the temporary spousal support order was issued. Thus, Husband agreed that he has not paid the full

amount of support required by temporary support order. In an effort to explain why he has not been able to comply with the court's order, Husband testified, in relevant part:

> Well, one, I don't make currently the money I made in 2014 and 2015. I haven't made that kind of money since 2016. It was a little over $200,000—and 2017 it's going to go up, but it's probably going to be about $250,000, somewhere around there give or take. * * * And [2018] will probably be similar in that range too, between 200 or 210 or the 250, and I don't know.

{¶ 18} Husband asserted that due to the reduction in his annual income, he could not renew his lease agreement and was forced to move in with his parents. Husband stated that he made the decision to move in with his parents because he wanted to comply with his "ethical obligation to try and meet the order." In light of these circumstances, Husband testified that he filed the motion to modify the temporary support order and the motion to stay because he "couldn't afford to pay it all."

{¶ 19} During his cross-examination, Husband agreed that for the year 2016, he paid a total of $44,339.32 towards his support obligation. He further agreed that $9,800 of the amount was paid towards his child support obligation, and $24,539.32 was paid towards his spousal support obligation. However, when presented with plaintiff's exhibit No. NNN-2, Husband agreed that the exhibit reflected that in 2016 he claimed to have paid $54,668 towards "alimony," an amount significantly higher than the $24,539.32 actually paid through CSEA. In light of this information, Husband agreed with the trial court that "something is

very, very wrong here." In an effort to explain this oversight, Husband suggested that plaintiff's exhibit No. NNN-2 may not have been the actual tax return he filed in 2016. Husband maintained that he did not intentionally manipulate the information set forth in his 2016 tax return, and that he assumed his tax return was drafted by his accountant to "match up with CSEA."

{¶ 20} Regarding his draft IRS Schedule K-1 for the year 2017, as reflected in plaintiff's exhibit No. SSS, Husband admitted that the exhibit did not include his Schedule C income. Thus, Husband agreed that his total income in 2017 "will be more" than that reflected in the draft Schedule K-1 form. Husband further conceded that in April 2018, he made a payment in the amount of $50,000 towards his estimated tax liability for the year 2017. In light of this payment, Husband agreed that he prioritized prepaying his estimated tax liability by choosing to pay the IRS before paying his temporary spousal support obligation.

{¶ 21} Husband further admitted that he has a commercial line of credit, and "theoretically" could have drawn from the line of credit in an amount up to $100,000 to pay his support obligations. When asked whether he could purge his contempt by using his line of credit to pay half of the outstanding $159,960.80 "just by writing a check in a matter of under a minute," Husband stated, "yes." Finally, Husband agreed that he has used income to take several vacations since the temporary support order was issued in April 2016.

{¶ 22} The parties appeared before the court again on May 11, 2018. At the onset of the hearing, plaintiff's counsel attempted to explain the variance between

the support payments reflected in the CSEA records and the amount of "alimony paid" for 2016, as stated in plaintiff's exhibit No. NNN-2. Plaintiff's counsel indicated that he discovered the 2016 tax return introduced during Husband's direct examination was only a draft version of the document and did not reflect the information contained in the actual tax return filed on Husband's behalf in 2016. Plaintiff's counsel sought to correct the record and maintained that the mistaken reliance on plaintiff's exhibit No. NNN-2 was done in good faith.

{¶ 23} After much confrontation, Frank Krempasky was permitted to testify on Husband's behalf. Krempasky testified that he is a CPA and has assisted Husband and Wife in preparing their tax returns in the past. Krempasky stated that in preparing to file the parties' tax returns for the year 2016, he had extensive conversations with Husband and Wife regarding whether they intended to file jointly or individually, and drafted several versions of the tax returns for them to review. Krempasky testified that "the biggest hold up within the tax filing was the amount of spousal support to be claimed by [Wife] and deducted by [Husband]." Krempasky was presented with plaintiff's exhibit Nos. VVV and WWW, and confirmed that the exhibits were copies of the final federal and state tax return he submitted on behalf of Husband for 2016. Krempasky testified that exhibit No. VVV reflects that Husband's "total income" for 2016 was $209,252 and that he paid alimony in the amount of $39,556. Krempasky testified that the amount of "alimony paid" by Husband also reflected the amount designated as "alimony received" in the tax return Krempasky filed on behalf of Wife.

{¶ 24} On May 15, 2018, Husband filed a motion to dismiss Wife's May 1, 2018 motion to show cause. In the motion, Husband alleged that "the show cause motion was not served upon counsel for the plaintiff[;] and the docket shows that the show cause motion was not served upon the plaintiff as of the May 7, 2018 hearing." In addition, Husband filed a separate motion, seeking to dismiss all pending motions to show cause, based on Wife's alleged failure to comply with the court's local rules for the enforcement of child support or spousal support orders.

{¶ 25} On May 18, 2018, Husband filed a written closing statement, arguing the evidence presented at the contempt hearing supported an inability to pay defense. With a total annual temporary support obligation of $134,664, Husband asserted that "[he] would be left [after taxes] with approximately $25,000 of his income to live on—while [Wife], who was earning a $80,000 salary, would have $214,664 in income to live on." Husband further argued that "there is no conceivable way" he could also make payments towards the ordered household expenses, Wife's car payment, medical expenses, and certain extracurricular expenses for the children. Thus, Husband asserted that he met his burden of proof by demonstrating that "there was an overwhelming 'ability to pay' defense that [Husband] demonstrated on all of the show cause motions related to just monthly support." Finally, Husband argued that he demonstrated a good-faith attempt to comply with the temporary support order by making payments exceeding $138,000 in support.

{¶ 26} Wife filed a written closing statement on May 21, 2018. Notwithstanding the evidence submitted during the contempt hearing, Wife argued that "Husband's income has been and continues to remain in question." Wife noted that Husband had not been forthright about his projected income during earlier stages of the proceedings and "has not been credible as to his testimony on income in this matter." Thus, Wife requested the court to "make a finding of contempt."

{¶ 27} On May 21, 2018, Wife also filed a brief in opposition to Husband's separate motions to dismiss, arguing that Husband "was not surprised by the contents of the May 1, 2018 motion to show cause," and that Husband did not raise a timely objection regarding Wife's compliance with the court's local rules.

{¶ 28} On June 14, 2018, the trial court issued a judgment entry setting forth its "contempt findings and sentence." With respect to the evidence documenting Husband's current income, the trial court determined that it was appropriate to "reduce [Husband's] spousal support obligation from $9,000 per month to $6,000 per month" based on the court's finding "that a[n] average and fair amount for [Husband's] income would be $250,000 annually." The court stated that the reduction would be "backdated to the date of the [November 1, 2018 motion to modify], reducing [Husband's] total spousal support obligation by $18,000." Thus, the trial court held that Husband's recalculated outstanding balance for unpaid support was $141,960.80.

{¶ 29} Next, the trial court denied Husband's motion to dismiss the show-cause motions, and found Husband to be in contempt of court for his failure to

comply with the April 25, 2016 temporary support order. Specifically, the trial court granted Wife's June 27, 2016, September 16, 2016, and May 1, 2018 motions to show cause, but denied her motion to show cause filed on February 2, 2017. Finding Husband lacked credibility with respect to his inability to pay defense, the court sentenced Husband as follows:

> Plaintiff is hereby sentenced for said contempt on the first offense to thirty (30) days in the Cuyahoga County Jail.
>
> Plaintiff is hereby sentenced for said contempt on the second offense to sixty (60) days in the Cuyahoga County Jail.
>
> Plaintiff is hereby sentenced for said contempt on the third offense to ninety (90) days in the Cuyahoga County Jail.
>
> Plaintiff's sentences may be purged provided that Plaintiff pay Defendant within fourteen (14) [days] of the date this order is journalized, the sum of $50,000 which sum is approximately thirty-five (35 percent) of said sum due and owing Defendant through the Child Support Enforcement Agency, and he is ordered to pay the sums due and owing to Defendant as [sic] and for extracurricular expenses, and uninsured, unreimbursed medical expenses for the minor children as set forth on Defendant's exhibit Nos. 12 and 16.

{¶ 30} Husband now appeals from the trial court's June 14, 2018 judgment.

## II. Law and Analysis

### A. Temporary Support Order

{¶ 31} In his first assignment of error, Husband argues the temporary support order was not predicated on his current income and relied on evidence of

past income that was unsustainable. In his second assignment of error, Husband argues the trial court violated Ohio law by failing to hold a modification hearing within 28 days of his motion to modify the temporary support order as required by Ohio Civ.R. 75(N). In his third assignment of error, Husband argues the trial court erred by dismissing his motion to modify the temporary support order without "analyzing any exhibits, testimony, or any evidence whatsoever." We address these assignments of error together for clarity.

{¶ 32} Collectively, Husband's first, second, and third assignments of error challenge the appropriateness of the trial court's temporary support order. However, because the trial court has yet to enter a final divorce decree, the validity of the temporary order is not subject to appellate review at this time. *See Millstein v. Millstein*, 8th Dist. Cuyahoga Nos. 79617, 79754, 80184, 80185, 80186, 80187, 80188, and 80963, 2002-Ohio-4783, ¶ 28 (finding that temporary support orders become subject to review after the court enters its final judgment.). This is because "[t]emporary support orders are subject to modification at any time and, as such, are generally not final, appealable orders within the jurisdiction of [the appellate] court." *Hibbs v. Hibbs*, 10th Dist. Franklin No. 08AP-93, 2008-Ohio-5621, ¶ 6, citing *Kelm v. Kelm*, 93 Ohio App.3d 686, 689, 639 N.E.2d 842 (10th Dist.1994) ("Because a temporary support order is provisional in nature, subject to modification at any time, it does not determine the ultimate rights of the parties involved."); *Parr v. Parr*, 8th Dist. Cuyahoga No. 70300, 1997 Ohio App. LEXIS 802, 32 (Mar. 6, 1997).

{¶ 33} Based on the foregoing, we decline to address Husband's first, second, and third assignments of error. As reflected in Husband's notice of appeal in this case, our review is limited to an examination of the trial court's June 14, 2018 judgment finding Husband in civil contempt. *In re Guardianship of Brady*, 8th Dist. Cuyahoga No. 83881, 2004-Ohio-5972, ¶ 15 ("A reviewing court's review is limited to a review of the judgment designated in the notice of appeal.").

## B. Service

{¶ 34} In his fourth assignment of error, Husband argues there was insufficient proof that Wife's June 27, 2016, September 16, 2016, February 2, 2017, and May 1, 2018 motions to show cause were served in compliance with Civ.R. 4.1. Alternatively, Husband contends that if this court determines that the service requirements of Civ.R. 4.1 are inapplicable, "it is clear that the May 1, 2018 contempt motion did not comply with the mandate of Ohio Civ.R. 5."

{¶ 35} The plaintiff bears the burden of obtaining proper service on a defendant. *Cincinnati Ins. Co. v. Emge*, 124 Ohio App.3d 61, 63, 705 N.E.2d 408 (1st Dist.1997). Service of process must be "'reasonably calculated to apprise interested parties of the action and to afford them an opportunity to respond.'" *Akron-Canton Regional Airport Auth. v. Swinehart,* 62 Ohio St.2d 403, 406, 406 N.E.2d 811 (1980), quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

{¶ 36} Where the plaintiff follows the Ohio rules governing service of process, courts presume that service is proper, unless the defendant rebuts this

presumption with sufficient evidence of nonservice. *Mitchell v. Babickas*, 8th Dist. Cuyahoga No. 105294, 2018-Ohio-383, ¶ 10, citing *McWilliams v. Schumacher,* 8th Dist. Cuyahoga Nos. 98188, 98288, 98390, 98423, 2013-Ohio-29, ¶ 49-50. To rebut the presumption of proper service, the defendant must produce "evidentiary-quality information" that demonstrates she did not receive service. *Mitchell* at ¶ 10, citing *Thompson v. Bayer*, 5th Dist. Fairfield No. 2011-CA-00007, 2011-Ohio-5897, ¶ 23. This evidence must be uncontradicted. *Rafalski v. Oates*, 17 Ohio App.3d 65, 66, 477 N.E.2d 1212 (8th Dist.1984). "It is reversible error for a trial court to disregard unchallenged testimony that a person did not receive service." *Id.*

{¶ 37} Where contempt is civil in nature, the civil rules regarding notice apply. *Home S. & L. Co. v. Midway Marine, Inc.*, 7th Dist. Mahoning No. 10 MA 109, 2012-Ohio-2432, citing *Bierce v. Howell,* 5th Dist. Delaware No. 06 CAF 05 0032, 2007-Ohio-3050. "'[T]here is no specified manner of process required for the filing of a motion for civil contempt; a person serving such a motion may do so in any manner authorized by the Ohio Rules of Civil Procedure*.'*" *FirstMerit Bank, N.A. v. Xyran Ltd.,* 8th Dist. Cuyahoga No. 102905, 2016-Ohio-699, ¶ 16, quoting *Cleveland v. Bryce Peters Fin. Corp.*, 8th Dist. Cuyahoga Nos. 98006-98024, 98078, 98079, 98163, 98164, 2013-Ohio-3613, ¶ 29-32.

{¶ 38} As stated, Husband's service argument relies on the methods of service outlined in Civ.R. 4.1. However, in the context of civil motions to show cause, this court has held that "Civ.R. 5 governs service of papers subsequent to the original complaint." *Bryce Peters Fin. Corp.*, 8th Dist. Cuyahoga Nos. 98006, 98007,

98008, 98009, 98010, 98011, 98012, 98013, 98014, 98015, 98016, 98017, 98018, 98019, 98020, 98021, 98022, 98023, 98024, 98078, 98079, 98163, and 98164, 2013-Ohio-3613, at ¶ 29, citing *Scarnecchia v. Rebhan*, 7th Dist. Mahoning No. 05 MA 213, 2006-Ohio-7053.

{¶ 39} Civ.R. 5(A) requires that "every order required by its terms to be served," and "every written notice," among other papers, "subsequent to the original complaint * * * be served upon each of the parties." "If a party is represented by an attorney, service under this rule must be made on the attorney unless the court orders service on the party." Civ.R. 5(B)(1). "The rational[e] for this rule is that a party represented by counsel usually speaks through counsel, and counsel 'is in a better position to understand the legal import of any documents required to be served on his or her client and the nature of the action to be taken.'" *Parallel Homes, L.L.C. v. Stephens*, 1st Dist. Hamilton No. C-130292, 2014-Ohio-840, ¶ 12, quoting S*wander Ditch Landowners' Assn. v. Joint Bd. of Huron & Seneca Cty. Commrs.*, 51 Ohio St.3d 131, 134, 554 N.E.2d 1324 (1990).

{¶ 40} Generally, service under Civ.R. 5 may be accomplished in a number of ways, including by hand delivery, commercial carrier service, or email. Civ.R. 5(B)(2)(a), (c), (d), and (f). Relevant to this case, service under the rule may also be made by "mailing it to the person's last known address by United States mail, in which event service is complete upon mailing." Civ.R. 5(B)(2)(c).

{¶ 41} With respect to Wife's June 27, 2016, September 16, 2016, and February 2, 2017 motions to show cause, the record reflects that Husband did not

challenge the adequacy of service of these motions below.  Rather, Husband's service arguments were limited to the May 1, 2018 motion to show cause. Nevertheless, even if this court were to consider Husband's arguments concerning the first three show-cause motions, we find no error.  Consistent with the precedent of this court, we find Husband's reliance of Civ.R. 4.1 is misplaced.   Here, the certificates of service contained in the June 27, 2016, September 16, 2016, and February 2, 2017 motions to show cause state that each motion was sent to counsel for Husband by ordinary mail.  Husband has presented no evidentiary quality information to suggest that service of these motions by ordinary mail was deficient.  Accordingly, we find service of these motions on counsel for Husband by ordinary mail was sufficient under Civ.R. 5(B).

{¶ 42} Regarding the May 1, 2018 show cause motion, Husband argued in his May 15, 2018 motion to dismiss that this motion to show cause "was never served upon counsel for the Plaintiff."   In addition, the record reflects that counsel for Husband verbally objected to the court's consideration of the May 1, 2018 motion to show cause, marked Defendant's exhibit No. 14, due to the lack of service.  Counsel argued, in relevant part:

> Judge, just objection to [Defendant's exhibit No.] 14.  It looks like it is a show cause that was filed on May 1st, 2018, just about a week ago. I'm not even sure it's been served yet.
>
> * * *
>
> Judge, I have to object.  [Husband] hasn't even been served with this yet.  It was filed on May 1st[.]

{¶ 43} Following a discussion on the record, the trial court overruled plaintiff counsel's objection and defense counsel was permitted to question Husband about the allegations set forth in the May 1, 2018 motion to show cause.

{¶ 44} On appeal, Husband contends that the motion was improperly served at an old address for his counsel, and therefore, failed to comply with Civ.R. 5(B)(2)(c). Our review of the certificate of service contained in the May 1, 2018 motion to show cause indicates that the motion was "sent via ordinary U.S. mail" to counsel's most recent address.[1] The certificate of service complies with the requirements of Civ.R. 5(B)(4). It indicates the correct date of service, the stated manner of service, and was signed by counsel.

{¶ 45} However, under the unique circumstances of this case, our review of the certificate of service does not end our inquiry. In this case, an exhibit attached to Husband's May 15, 2018 motion to dismiss establishes that service of the May 1, 2018 motion to show cause was "returned to sender." The docket reflects that the mailing was returned to defense counsel because the mailing envelope listed an address for plaintiff's counsel that was different than the address listed in the motion's certificate of service. In short, the certificate of service correctly listed counsel's new address; however, the motion was mailed in an envelope that mistakenly listed counsel's old address. Recognizing this oversight, defense counsel forwarded a copy of the May 1, 2018 motion to show cause to plaintiff's counsel in

---

[1] The record reflects that counsel moved office locations during the pendency of this litigation.

an email correspondence sent at 5:58 p.m. on May 7, 2018 — well after the May 7, 2018 contempt hearing had concluded.

{¶ 46} At the time of the May 7, 2018 contempt hearing, the trial court, nor counsel for Wife, had any reason to believe service was not successfully perfected on counsel for Husband once the May 1, 2018 motion was mailed. Undoubtedly, counsel for Wife only recognized this oversight in light of the objection raised by counsel for Husband at the onset of the contempt hearing. Nevertheless, we find Husband has established that Wife failed to comply with the service requirements of Civ.R. 5 prior to the contempt hearing, albeit unintentionally. Counsel for Wife had knowledge of the new address associated with counsel for Husband, but mailed the motion to an address that was not counsel's "last known address."

> [T]he language of the Civil Rules regarding service of process is mandatory, and * * * a trial court may not consider a motion if the motion failed to comply with the rules regarding service of process.

*Bozsik v. West*, 9th Dist. Lorain No. 16CA010924, 2017-Ohio-7781, ¶ 9, quoting *Pla v. Wivell*, 9th Dist. Summit No. 25814, 2011-Ohio-5637, ¶ 14. Based on the foregoing, we find Husband has produced "evidentiary-quality information" demonstrating that he did not receive service of the May 1, 2018 motion prior to the commencement of the contempt hearing. Accordingly, the trial court committed reversible error by considering the merits of the motion to show cause absent proper service. Moreover, it is immaterial that counsel for Wife attempted to correct the clerical error following the May 7, 2018 contempt hearing, because the record

reflects that all material testimony had been presented to the trial court before the corrective email was sent.

{¶ 47} Husband's fourth assignment of error is sustained in part. The trial court's finding of contempt based on the allegations set forth in the May 1, 2018 motion is vacated. Our conclusion does not implicate the court's judgment on the remaining motions to show cause.

### C. Local Rule 20 of the Domestic Relations Court

{¶ 48} In his fifth assignment of error, Husband argues that "defendant's contempt motions, and the evidence introduced at the [contempt] hearing, did not comply with Local Rule 20 of the Cuyahoga County Domestic Relations Court."

{¶ 49} Loc.R. 20 of the Court of Common Pleas of Cuyahoga County, Domestic Relations Division, governs the enforcement of "existing child support or spousal support order[s] *post-decree*." (Emphasis added.) The rule requires that a motion to enforce such orders be supported by a sworn affidavit "which sets forth the specific facts constituting the alleged non-compliance." Loc.R. 20(B). In addition, the motion must state the following:

> (1) The date of journalization of the judgment entry that sets forth the existing support order.
>
> (2) The specific provisions, referencing paragraph and page numbers, with which a party has allegedly failed to comply.
>
> (3) If the motion pertains to non-payment of periodic support, the amount of the arrears as of the last day of the month before the motion was filed and whether interest is requested.

**(4)  If the motion pertains to non-payment of health care expenses, the amount of unpaid health care expenses and a statement that copies of the bills were provided to the opposing party and payment was demanded before the motion was filed. If the motion asserts non-payment of child(ren)'s health care expenses, a completed Explanation of Health Care Expenses must be attached to the motion.**

**(5)  The specific relief requested.**

*Id.*

{¶ 50} With respect to the enforcement of health care expenses, Loc.R. 20(G) provides:

**(1)   At the hearing, the moving party must submit a completed Explanation of Health Care Expenses, all health care bills, explanations of benefits, and any other documents that support the Explanation of Health Care Expenses.**

**(2)  Copies of all documents submitted to the Court must be exchanged with the opposing party before hearing.**

**(3)  Failure of a party to submit the required documents may result in sanctions including, but not limited to, dismissal of his or her motion or an award of attorney fees.**

{¶ 51}  After careful consideration, we find a clear reading of the local rule reflects that its mandates apply only to "post-decree" motions to enforce. Unquestionably, the motions to show cause filed in this case relate to an order that was issued prior to the divorce decree.  Procedurally, Loc.R. 20 is inapplicable. Husband has provided no basis for this court to strictly apply the requirements of Loc.R. 20 to a filing not expressly contemplated under the rule.  Accordingly, Husband's reliance on Loc.R. 20 is unpersuasive.  The trial court did not commit reversible error by denying Husband's motion to dismiss for failure to comply with Loc.R. 20.  Husband's fifth assignment of error is overruled.

## D. Civil Contempt

{¶ 52} In his sixth assignment of error, Husband argues the trial court erred in finding him in civil contempt for not complying with the temporary child support and spousal support orders.

{¶ 53} We review a finding of contempt for an abuse of discretion. *Kapadia v. Kapadia*, 8th Dist. Cuyahoga No. 96910, 2012-Ohio-808, ¶ 22, citing *In re Contempt of Modic*, 8th Dist. Cuyahoga No. 96598, 2011-Ohio-5396, ¶ 7. An abuse of discretion implies the trial court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 54} Contempt is defined as a disregard of, or disobedience to, an order or command of judicial authority. *Kapadia* at ¶ 26, citing *State v. Flinn*, 7 Ohio App.3d 294, 455 N.E.2d 691 (9th Dist.1982). R.C. 2705.02 provides that disobedience of a lawful order is punishable as contempt. A trial court may therefore employ civil contempt sanctions in order to coerce a party into complying with a court order. *Whitman v. Monastra*, 8th Dist. Cuyahoga No. 76633, 2000 Ohio App. LEXIS 4637, *17 (Oct. 5, 2000).

{¶ 55} The party initiating the contempt proceedings must demonstrate, by clear and convincing evidence, that the contemnor has failed to pay support. *Pugh v. Pugh*, 15 Ohio St.3d 136, 472 N.E.2d 1085 (1984). The contemnor then bears the burden of proving his inability to pay the court-ordered support. *Id.* at 140. For purposes of contempt, "[a] party must take all reasonable steps within [his or] her

power to comply with the court's order and, when raising the defense of impossibility, must show 'categorically and in detail' why [he or] she is unable to comply with the court's order." *Briggs v. Moelich*, 8th Dist. Cuyahoga No. 97001, 2012-Ohio-1049, ¶ 15, citing *Lahoud v. Tri-Monex, Inc.*, 8th Dist. Cuyahoga No. 96118, 2011-Ohio-4120, ¶ 54. Unsubstantiated claims of financial difficulties do not establish an impossibility defense to a contempt charge. *Wagshul v. Wagshul*, 2d Dist. Montgomery No. 23564, 2010-Ohio-3120, ¶ 41, citing *Bishop v. Bishop*, 5th Dist. Stark No. 2001CA00319, 2002-Ohio-1861.

> When assessing a contemnor's defense of an alleged inability to pay, the trial court is in the best position to evaluate the credibility of the alleged contemnor in that regard and this court will not substitute its judgment for that of the trial court in such a situation.

*Seoud v. Bessil*, 7th Dist. Mahoning No. 15 MA 0090, 2016-Ohio-8415, ¶ 23, quoting *Kachmar v. Kachmar*, 7th Dist. Mahoning No. 12 MA 179, 2014-Ohio-652, ¶ 15, citing *Anderson v. Anderson*, 7th Dist. Columbiana No. 96 CO 21, 1998 Ohio App. LEXIS 5839, *4 (Dec. 1, 1998).

{¶ 56} In this case, there is no dispute that Wife established a prima facie case of contempt by showing Husband's failure to comply with the complete terms of the temporary support order. Throughout the contempt hearing, Husband routinely conceded that he failed to comply with the temporary support order, particularly his spousal support obligations.

{¶ 57} On appeal, however, Husband argues "he clearly demonstrated an inability to completely comply with the temporary support order" by submitting

evidence that demonstrated his income has substantially decreased since 2015. Husband contends that after deducting taxes and his support obligation from his 2016 total income, he does not have the financial ability to comply with the court's order and simultaneously support himself.

{¶ 58} After careful review of the record in its entirety, we are unable to conclude that Husband satisfied his burden of establishing his inability to comply with the court's order. As previously discussed, in the absence of a final divorce decree, our review is limited to whether Husband disobeyed a lawful order of the court, not the merits of the nonfinal order. In this case, the relevant CSEA records and Husband's own testimony during the contempt hearing, demonstrate that Husband's failure to comply with the trial court's temporary support order was immediate and calculated. Here, Husband's disobedience occurred within days of the court's issuance of the temporary support order, and just months after he earned the highest annual total income in his career. Thus, it is clear that Husband's decision to ignore the specific terms of the court order was not based on his ability to pay. Rather, his conscious decision was predicated on his belief that the order was unfair or inequitable. While Husband successfully presented evidence during the May 7, 2018 and May 11, 2018 hearings to warrant a modification of his aggregate spousal support obligation, the evidence did not clearly and convincingly establish that he was unable to comply with the court order.

{¶ 59} This is not the case where the contemnor has demonstrated an inability to work, an involuntary termination, a significant medical issue, or a

complete depletion of financial resources. *See Herold v. Herold*, 10th Dist. Franklin No. 04AP-206, 2004-Ohio-6727, ¶ 37 (finding contemnor established an impossibility defense with evidence that she was, through no fault of her own, financially unable to comply with the order since she was medically diagnosed and administratively determined to be unable to work); *Zifer v. Huffman*, 5th Dist. Tuscarawas No. 2017 AP 06 0017, 2018-Ohio-322 (finding trial court did not abuse its discretion in finding contemnor had an inability to pay a spousal support order due to his involuntary termination.); *Wagshul v. Wagshul*, 2d Dist. Montgomery No. 23564, 2010-Ohio-3120, ¶ 41 (finding contemnor "established an impossibility defense with evidence that the gross revenues from his practice declined by forty percent between 2004 and 2007, and that even so he incurred debt and substantially exhausted his savings to continue to pay his support obligation").

{¶ 60} Throughout this lengthy litigation and during the majority of the contempt hearing, Husband has continuously debated the merits of the temporary support order, relying exclusively on his 2016 tax records. While these records established that his total income is presently less than it was in 2015, the exhibits do not, standing alone, constitute a comprehensive reflection of Husband's complete finances. Thus, unlike the foregoing cases, Husband's inability to pay defense lacked complete financial transparency. Significantly, the contempt hearing is devoid of any reference to Husband's current bank records, expenses, or debts. Absent such

relevant information, we find Husband's inability-to-pay defense to be unsubstantiated.[2]

{¶ 61} Moreover, we are unpersuaded by Husband's suggestion that he made a good-faith attempt to comply with the court's order by making payments of support in the amount of $131,185.32 between June 1, 2016 and May 6, 2018. (Defendant's exhibit No. 15.) We recognize that Husband's partial payment of support is not insignificant. However, partial payment does not equate to good faith where, as here, Husband has not demonstrated that he was paying his obligation to the full extent of his capability. *See Lemke v. Lemke*, 8th Dist. Cuyahoga No. 94557, 2011-Ohio-457, ¶ 45; *Faubel v. Faubel*, 7th Dist. Mahoning Nos. 05-MA-101 and 05-MA-210, 2006-Ohio-4679, ¶ 51 ("[Contemnor] erroneously equates partial payments with good faith.").

{¶ 62} In contrast to the evidence submitted by Husband, defense counsel effectively cross-examined Husband about specific examples of his current finances in an effort to demonstrate that Husband is able to comply with the court order, but simply does not agree with the court's judgment and/or prioritizes other debts. In this case, Husband conceded that in April 2018, he made payments in the amount of $50,000 towards his estimated tax liability for 2017. Husband testified that he made the payment before his taxes were filed for 2017 and that he could have used the funds to pay a portion of his support arrearages. *See Ruben v. Ruben*, 10th Dist.

---

[2] Husband did introduce evidence of past personal and professional bank accounts at various stages of the litigation. However, this information was not relied upon or referenced in support of Husband's ability to pay defense during the contempt hearing.

Franklin No. 12AP-717, 2013-Ohio-3924, ¶ 32 ("Impossibility of performance is not a valid defense where the contemnor created the impossibility by his own actions."). In addition, Husband admitted that he has access to a line-of-credit that could immediately be used to satisfy a significant portion of his support arrearages. *See Monastra v. Monastra*, 8th Dist. Cuyahoga No. 76633, 2000 Ohio App. LEXIS 4637, 13 (Oct. 5, 2000) (holding "[b]ecause appellant made no effort or inquiry about borrowing from any source to even partially satisfy his obligation, the trial court did not abuse its discretion by apparently discounting" the appellant's testimony regarding his inability to pay his arrearage); *Dudley v. Dudley,* 12th Dist. Butler No. CA2012-04-074, 2013-Ohio-859, ¶ 19 (determining contemnor did not establish impossibility where he claimed "his bank would not loan him money" but "there is no indication in the record as to why the bank denied his request, or whether the bank had offered any other terms or alternate options").

{¶ 63} Finally, Husband testified that he has taken several discretionary vacations since the April 2016 order was issued. *See Wehrle v. Wehrle*, 10th Dist. Franklin No. 12AP-386, 2013-Ohio-81, ¶ 31 (holding trial court did not abuse its discretion in rejecting defendant's impossibility defense where he "'indulged in discretionary expenses' while he was under an obligation to pay spousal" support).

{¶ 64} Viewing the foregoing collectively, we find the evidence supports Wife's position that Husband's noncompliance with the court's order was not due to an impossibility, but was based on an unfounded litigation strategy and/or his dissatisfaction with the trial court's denial of his original request for modification of

the temporary support order. The trial court agreed, finding Husband's defense lacked credibility.

{¶ 65} Deferring to the trial court's assessment of credibility, we find Husband failed to demonstrate in sufficient, categorical detail his inability to comply with the court's order. Accordingly, the trial court did not abuse its discretion in finding Husband in contempt.

{¶ 66} Husband's sixth assignment of error is overruled.

### E. Purge Order

{¶ 67} In his seventh assignment of error, Husband argues the trial court placed impossible and/or unconscionable terms on him to purge the contempt.

{¶ 68} With any sanction for civil contempt the court must allow the contemnor an opportunity to purge the contempt. *Rose v. Rose*, 8th Dist. Cuyahoga No. 99933, 2013-Ohio-5136, ¶ 7, citing *Carroll v. Detty*, 113 Ohio App.3d 708, 712, 681 N.E.2d 1383 (4th Dist.1996). A trial court abuses its discretion by ordering purge conditions that are unreasonable or where compliance is impossible. *Id.*, citing *Burchett v. Miller*, 123 Ohio App.3d 550, 552, 704 N.E.2d 636 (6th Dist.1997). The party who is in contempt bears the burden of presenting sufficient evidence at the contempt hearing to establish that the trial court's purge conditions are unreasonable or impossible for him to satisfy. *Marx v. Marx*, 8th Dist. Cuyahoga No. 82021, 2003-Ohio-3536. In addition, a contemnor's "unsupported claims of financial difficulty or an inability to pay are insufficient to establish that the trial

court's conditions are unreasonable." *Rose* at ¶ 10, citing *Pettit v. Pettit*, 8th Dist. Cuyahoga No. 64582, 1993 Ohio App. LEXIS 6200, * 12 (Dec. 23, 1993).

{¶ 69} The purge conditions in this case required Husband to pay Wife $50,000 and the sums due and owing to Wife for certain extracurricular activity and medical expenses within 14 days of the contempt order. Here, Husband reiterates his inability to pay arguments in support of his position that the purge conditions were impossible. However, having determined that Husband failed to demonstrate his inability to comply with the underlying court order, we are unable to conclude that the purge conditions are unreasonable or impossible for Husband to meet. The conditions are directly related to the circumstances of Husband's contempt and are specifically constructed to compel present and future compliance with the court's order.

{¶ 70} Husband's seventh assignment of error is overruled.

{¶ 71} Judgment affirmed in part, reversed in part, and remanded.

It is ordered that appellee and appellant share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas, Domestic Relations Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN T. GALLAGHER, PRESIDING JUDGE

**EILEEN A. GALLAGHER, J., and**
**RAYMOND C. HEADEN, J., CONCUR**