[Cite as *In re Contempt of S.R.*, 2023-Ohio-531.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE CONTEMPT OF S.R. | : | |
| | : | No. 111701 |
| [Appeal by S.R., Respondent-Appellant, | : | |
| in the matter styled: | : | |
| M.T., Petitioners-Appellees v. | : | |
| S.R., Respondent-Appellant.] | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 23, 2023

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CV-21-948817, CV-21-949009, CV-21-955162, and CV-21-951182

### *Appearances:*

Joseph Lewandowski, *for appellant*.

M.T., *pro se*.

EILEEN T. GALLAGHER, P.J.:

{¶ 1} Respondent-appellant, S.R. ("appellant"), appeals an order finding him in contempt of court for violating the terms of a civil stalking protection order ("CSPO"). He claims the following error:

> The magistrate abused his discretion when he granted petitioner's (M.T.) pro se motion for civil contempt against respondent (S.R.).

{¶ 2} We affirm the trial court's judgment.

## I. Facts and Procedural History

{¶ 3} The CSPO at issue in this case named petitioner-appellee, M.T., and petitioner K.S., as protected persons (collectively "petitioners"). Petitioners live together in a home owned by K.S. in Cleveland, Ohio. S.R. lives next door to petitioners with his wife.

{¶ 4} On June 16, 2021, M.T. filed a petition in Cuyahoga C.P. No. CV-21-948817, seeking a CSPO on his own behalf and on behalf of K.S. The petition alleged, among other things, that S.R. constantly threatened and harassed petitioners and that S.R. routinely trespassed on petitioners' property. The petition further alleged that S.R. has a "violent past." M.T. requested that the court issue a CSPO prohibiting S.R. from, among other things, (1) threatening or harassing petitioners; (2) entering their residence and places of employment, including the grounds and parking lots of those locations; and (3) interfering with petitioners' right to occupy their residence.

{¶ 5} Five days later, S.R. filed a petition for CSPO against M.T. in Cuyahoga C.P. No. CV-21-949009, on behalf of himself, his wife, and their adult children. S.R.'s petition alleged that M.T. threatened and harassed S.R. and his wife. S.R.'s petition was consolidated with M.T.' petition for hearing and disposition.

{¶ 6} Following a hearing, a magistrate issued a decision granting M.T.'s petition and issued a CSPO in favor of M.T. and K.S. The magistrate also granted S.R.'s petition against M.T., but denied it with respect to S.R.'s wife and children.

The order granting a CSPO in favor of M.T. and K.S. (petitioners) against S.R. (respondent) provided, in relevant part:

THE COURT HEREBY ORDERS:

That the above named Respondent be restrained from committing acts of abuse or threats of abuse against Petitioner and other protected persons named in this order. Additional terms of this Order are set forth below.

* * *

RESPONDENT SHALL STAY AWAY FROM PETITIONER * * * Respondent must be 500 feet away from protected parties while off of his property at [respondent's address] regardless of the distance between himself and any protected persons. Respondent must be 15 feet away from any protected persons while entering or exiting his [home] or while in the yard[.] * * * [This includes] any place those protected persons may be found, or any place Respondent knows, or should know the protected persons are likely to be * * *[.] If Respondent accidently comes in contact with protected persons in any public or private place, respondent must depart immediately. This order includes encounters on public or private roads, highways, and thoroughfares.

RESPONDENT SHALL NOT INITIATE OR HAVE ANY CONTACT with the protected persons named in this Order * * *

RESPONDENT SHALL NOT use any form of electronic surveillance on protected persons.

RESPONDENT SHALL NOT USE CAUSE OR ENCOURAGE ANY PERSON to do any act prohibited by the Order and must remove or shield his existing security cameras so that they do not view petitioner's property.

(Journal entry dated 6/30/21.)

{¶ 7} M.T., pro se, later filed a motion for contempt (a.k.a. a motion to show cause), alleging that S.R. failed to remove the surveillance cameras directed at K.S.'s property. M.T. further alleged:

[S.R.] has proven to be a repetitive liar and a danger to our community. As seen in the video [S.R.] has spread malicious rumors about plaintiffs [M.T.] and [K.S.]. [S.R.] has been found in violation for the fifth time 2021-235237.

When faced with arrest will lie to police and provide forged documents and false statements. [S.R.] has lied and mislead the court to receive a mutual order to continue his aggravated menacing towards the plaintiffs.

(Motion for contempt filed Aug. 3, 2021.)

{¶ 8} A magistrate held a hearing on the motion for contempt in March 2022. At the hearing, M.T. claimed that S.R. violated the CSPO by (1) failing to remove surveillance cameras directed at K.S.'s property (tr. 85-90, 116-124), (2) videorecording M.T. with a video camera set up on S.R.'s car that was triggered with a motion sensor (tr. 90-95), (3) sitting in his nephew's car while parked in close proximity to K.S.'s property (tr. 95-100), (4) repeatedly driving past K.S.'s house at a slow speed in order to peer through the windows and making U-turns in front of K.S.'s house (tr. 100-104), and (5) taking photographs of the front and back of K.S.'s house. (Tr. 110.)

{¶ 9} After hearing all the evidence, the magistrate issued a decision finding S.R. in civil contempt of court. The magistrate found that S.R. violated the CSPO by (1) continuing to maintain surveillance cameras directed at K.S.'s home after the CSPO required him to remove them, (2) sitting in his nephew's car while parked in close proximity to K.S.'s property, and (3) driving past K.S.'s house and making U-turns outside the house. Because M.T. was not completely without fault, the magistrate did not order S.R. to pay any damages to petitioners. Because both

parties expressed a love for animals, the magistrate ordered S.R. to make a donation to the Animal Protective League in the amount of $1,231.88 instead of paying damages to M.T. and K.S. The order also required S.R. to file a receipt for the donation with the Cuyahoga County Clerk of Courts.

{¶ 10} S.R. filed timely objections to the magistrate's report. The court overruled the objections and adopted the magistrate's report. S.R. now appeals the trial court's judgment.

## II. Law and Analysis

### A. Standard of Review

{¶ 11} We review a trial court's order holding a person in contempt for an abuse of discretion. *C.L. v. Weiler*, 8th Dist. Cuyahoga No. 111474, 2023-Ohio-13, ¶ 19, citing *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10, 11, 417 N.E.2d 1249 (1981). An abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35. In other words, "[a] court abuses its discretion when a legal rule entrusts a decision to a judge's discretion and the judge's exercise of that discretion is outside of the legally permissible range of choices." *State v. Hackett*, 164 Ohio St.3d 74, 2020-Ohio-6699, 172 N.E.3d 75, ¶ 19.

{¶ 12} This court has held that an abuse of discretion may be found where a trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland*, 176 Ohio

App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, ¶ 15 (8th Dist.).  When applying the abuse-of-discretion standard, a reviewing court may not substitute its judgment for that of the trial court.  *Vannucci v. Schneider*, 2018-Ohio-1294, 110 N.E.3d 716, ¶ 22 (8th Dist.).

### B.  Contempt Finding

{¶ 13} In the sole assignment of error, S.R. argues the trial court abused its discretion in finding him in contempt.

{¶ 14} "Contempt is defined as a disregard of, or disobedience to, an order or command of judicial authority."  *Palnik v. Crane*, 8th Dist. Cuyahoga No. 107400, 2019-Ohio-3364, ¶ 54.  Civil contempt, as distinguished from criminal contempt, is a sanction designed to enforce compliance with a court order or to compensate for losses or damages sustained by reason of noncompliance.  *Pugh v. Pugh*, 15 Ohio St.3d 136, 140, 472 N.E.2d 1085 (1984), citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 93 L.Ed. 599 (1949).

{¶ 15} To establish a prima facie case of contempt of court, the moving party must establish, by clear and convincing evidence, the existence of a court order, the nonmoving party's knowledge of that order, and that the nonmoving party violated it.  *In re K.B.*, 8th Dist. Cuyahoga No. 97991, 2012-Ohio-5507, ¶ 11.  Despite S.R.'s assertion to the contrary, proof of a purposeful, willful, or intentional violation of a court order is not a prerequisite to a finding of contempt.  *Bridgeland v. Bridgeland*, 8th Dist. Cuyahoga No. 109831, 2021-Ohio-2587, ¶ 18; *Collins v. Collins*, 2018-Ohio-1512, 110 N.E.3d 999, ¶ 26 (8th Dist.), citing *Pugh*.

{¶ 16} However, "a court order cannot be enforced in contempt unless the order was 'clear and definite, unambiguous, and not subject to dual interpretations.'" *Toledo v. State*, 154 Ohio St.3d 41, 2018-Ohio-2358, 110 N.E.3d 1257, ¶ 23, quoting *State ex rel. Cincinnati Enquirer v. Hunter*, 138 Ohio St.3d 51, 2013-Ohio-5614, 3 N.E.3d 179, ¶ 25.

{¶ 17} "Clear and convincing evidence" is evidence that will form a firm belief in the mind of the trier of fact as to the facts sought to be established." *Cincinnati Bar Assn. v. Massengale*, 58 Ohio St.3d 121, 122, 568 N.E.2d 1222 (1991). The trial court's decision should not be disturbed as against the manifest weight of the evidence if the decision is supported by some competent and credible evidence. *C.E. Morris Co. v. Foley Constr.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

{¶ 18} "Once the prima facie case has been established by clear and convincing evidence, the burden shifts to the nonmoving party to either rebut the initial showing of contempt or establish an affirmative defense by a preponderance of the evidence." *K.M.M. v. A.J.T.*, 8th Dist. Cuyahoga No. 109815, 2021-Ohio-2452, ¶ 24, citing *Allen v. Allen*, 10th Dist. Franklin No. 02AP-768, 2003-Ohio-954, ¶ 16.

{¶ 19} The protection order at issue is a boilerplate form that provides, in relevant part:

THE COURT HEREBY ORDERS:

That Respondent be restrained from committing acts of abuse or threats of abuse against Petitioner and other protected persons named in this Order. Additional terms of this Order are set forth below.

* * *

RESPONDENT SHALL STAY AWAY FROM PETITIONER and all other protected persons named in this order, and not be present within <u>See Below</u>[1] (distance) of any protected persons wherever those protected persons are likely to be even with the protected person's permission. If Respondent accidentally comes into contact with protected persons in any public or private place, Respondent must depart immediately. This Order includes encounters on public and private roads, highways, and thoroughfares.

RESPONDENT SHALL NOT INITIATE OR HAVE ANY CONTACT with the protected persons named in this Order or their residences, businesses, places of employment, schools, day care centers, or child care providers. Contact includes, but is not limited to, landline, cordless, cellular or digital telephone; text instant messaging; fax; or e-mail; voicemail; delivery service; social media; blogging; writings; electronic communications; posting a message; or communications by any other means directly or through another person.

RESPONDENT SHALL NOT use any form of electronic surveillance on protected persons.

RESPONDENT SHALL NOT CAUSE OR ENCOURAGE ANY PERSON to do any act prohibited by this Order and must remove or shield his existing security cameras so that they do not view Petitioner's property.

Finally, the protection order expressly identifies the "protected persons" as M.T. and K.S.

{¶ 20} We do not find any ambiguity in the protection order. The order clearly and unambiguously prohibits S.R. from having contact with M.T. and K.S.,

---

[1] Because the parties live next door to each other, the protection order provided additional, non-boilerplate language, specifying as follows:

Respondent must be 500 feet away from protected parties while off of his property [address redacted]. Respondent may be present inside his house [address redacted] regardless of the distance between himself and any protected persons. Respondent must be 15 feet away from any protected persons while entering or exiting his house at [address redacted] or while in the yard at [address redacted].

from coming within 500 feet of either M.T. or K.S., and specifically prohibits S.R. from directing any electronic surveillance to surveil M.T. and K.S. We, therefore, find that the order was "'clear and definite, unambiguous, and not subject to dual interpretations.'" *Toledo*, 154 Ohio St.3d 41, 2018-Ohio-2358, 110 N.E.3d 1257, at ¶ 23, quoting *State ex rel. Cincinnati Enquirer*, 138 Ohio St.3d 51, 2013-Ohio-5614, 3 N.E.3d 179, at ¶ 25.

{¶ 21} The record establishes that S.R. was aware of the order. S.R. acknowledged that he attended the protection hearing, and he filed timely objections to the magistrate's decision. (Tr. 145.) And, S.R. was served with a copy of the protection order and obtained his own protection order against M.T. at the same time.

{¶ 22} Despite having knowledge of the protection order, S.R. continued to direct functioning electronic-surveillance cameras at K.S.'s property in violation of the order. (Tr. 88-90.) M.T. testified that he called the police to report the violation. Police responded to the scene and ordered S.R. to remove the cameras. (Tr. 88-90.) Indeed, S.R. admitted at the contempt hearing that the cameras were still in use after the protective order was issued. (Tr. 145, 160-161.)

{¶ 23} There was also evidence that S.R. repeatedly sat in the street in a relative's car parked less than 500 feet from K.S.'s house for extended periods of time. It is not clear whether S.R. knew for certain that the protected parties were inside the house, but he could have reasonably expected them to be there. Although S.R. is permitted to pass by K.S.'s home on his way to and from his own house, he

was not in the process of ingress or egress when he was sitting in the car for long periods of time. (Tr. 97-99.) Referring to a photograph of the parked car, M.T. testified as follows:

Q: And how long does it sit out there?

A: Oh, my God. It sits out there for hours.

Q: Okay. Is [S.R.] in the truck when it's parked in front of your house?

A: This particular time, yes.

Q: Okay. Is that something that they leave their lights on the whole time?

A: Yes.

* * *

Q: And did the police — did it do anything? Did it stop the person from coming by?

A: It helped, but it didn't stop him.

* * *

Q: This is a police report that was filed by you — by [K.S.] that they were watching your house?

A: Yes.

Q: Were you concerned that this person was sitting there * * * were they intimidating you?

A: Yes.

Q: Were you afraid of them?

A: Yes.

Q: How often is S.R. in the truck with this person.

A: Sometimes he is, sometimes he's not.

     \*   \*   \*

Q: Is he still there when she leaves and comes home from work?

A: Yes.

Q: Is that something that affects you as far as your working ability?

A: Absolutely.

Q: Why is that?

A: Because since we have gotten a restraining order and start to stand up for ourselves, he's doing it more, and now, I have to actually — I have to actually wait for her to leave in the morning, and, you know, watch her back, and then when she comes back, I'm on the clock, and I have to come back and be in the vicinity around 3:00.

Q: Okay.

A: And when she leaves to go work out, because he's persistent with this.

(Tr. 97-100.)

{¶ 24} There was also evidence that S.R. frequently drove past K.S.'s home at a slow rate of speed and made a U-turn near K.S.'s house in violation of the protection order. Referring to pictures of S.R.'s vehicle passing the house, M.T. explained:

Q: [A]re there times \* \* \* when you see [S.R.] driving by your house?

A: Yes.

Q: And what direction is he going? He drives past your house, I guess he's going towards the dead end?

A: Towards the dead end, yes.

Q: Okay. And \* \* \* how fast is he going when goes by your house?

A: Slowly.

Q: Okay. How often do you see him going by your house slowly?

A: You know, at least three times a month he's doing something annoying.

\* \* \*

Q: What happens when he goes to the dead end?

A: He's slowing down in front of our front window to peer through the window, and then he's making a slow U-turn to let us know that he's out there stalking and goes, you know —

Q: And then drives the other way?

A: Yeah.

Q: So it's not like he's going to see the neighbor on the other side of your house —

A: No.

(Tr. 101-102.) Again, S.R. could reasonably expect that the protected parties were present inside the home when he was driving by.

{¶ 25} S.R. further contends that the magistrate abused his discretion by holding a hearing on matters that were not specifically alleged in the motion for contempt. He contends the allegations in the contempt motion are too vague to constitute a "charge in writing." (Appellant's brief p. 19.) However, the pro se motion for contempt specifically alleges that S.R. failed to remove the surveillance cameras as required by the CSPO. The motion also alleges that S.R. "continued his aggravated menacing towards the plaintiffs." These allegations are sufficient to put S.R. on notice of the alleged violations.

{¶ 26} Finally, S.R. argues the trial court erred in ordering him to pay sanctions since M.T. had "unclean hands." "The unclean hands doctrine generally provides that when a party takes the initiative to set in motion a judicial action in order to obtain some remedy, the court will deny the remedy where the party seeking it has acted in bad faith by his or her prior conduct." *Gardner v. Bisciotti*, 10th Dist. Franklin No. 10AP-375, 2010-Ohio-5875, ¶ 15.

{¶ 27} However, we agree with the magistrate who remarked that these actions "merit punishment because to permit them to occur without consequences would invite more serious violations of the order." (Apr. 6, 2022, magistrate's decision p.7.) Because there was evidence that M.T. had "unclean hands," the magistrate did not require S.R. to provide any remedy to M.T. Instead, the magistrate ordered S.R. to make a donation to a third party, the Animal Protective League, in the amount of $1,231.88 as a sanction to deter additional violations of the protection order. Because M.T. did not profit from his own role in the parties' conflict, we find no abuse of discretion in these sanctions.

{¶ 28} The protection order clearly and unambiguously described the prohibited conduct, and there is clear and convincing evidence that S.R. violated the protection order. Accordingly, the sole assignment of error is overruled.

{¶ 29} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, PRESIDING JUDGE

EMANUELLA D. GROVES, J., and
MICHAEL JOHN RYAN, J., CONCUR