JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Frank Gruttadauria appeals from a judgment in favor of plaintiffs-appellees Robert and Carl Fazio, Carl Fazio as Trustee, and two investment companies, Fazio Investment One, Limited and Fazio Investment Three, Limited (collectively referred to as "the Fazios"). The Fazios brought suit against Gruttadauria, a stock broker, seeking compensatory and punitive damages caused by his fraudulent misappropriation of more than $54 million from them and other investors. In an ex parte trial, the court awarded the Fazios compensatory damages of $19,190,944 and punitive damages of $38,381,988. Gruttadauria complains that the court erred by refusing to dismiss the Fazios' complaint because (1) the issues raised had previously been resolved in arbitration, (2) the claims were time-barred by the relevant statute of limitations, and (3) the court acted partially toward the Fazios. We find no error and affirm.
 {¶ 2} Gruttadauria's admitted misappropriation of client funds has been well-documented and will not be repeated in detail. By his own admission in a guilty plea to federal criminal securities violations inUnited States v. Gruttadauria (N.D.Ohio, Jan. 25, 2002), No. 1:02 CR 344, Gruttadauria engaged in a 14-year long fraud:
 {¶ 3} "[t]o conceal significant market losses in customer accounts under his supervision and control, said scheme having affected at least 28 customers, *Page 2 
and involved the misappropriation and misapplication of millions of dollars of client funds, said misapplication and misappropriation of funds exceeding $40 million between January 1, 1996 and January 11, 2002, alone, accounts that beginning as early as on or about January 1, 1996, and continuing through on or about January 11, 2002, the defendant FRANK GRUTTADAURIA, generated and caused to be generated, and mailed and caused to be mailed, false and fictitious monthly account statements to customers which contained materially false and/or fictitious monthly account statements to customers which contained materially false and/or fictitious information concerning the holdings in said accounts, and significantly overstated the monetary value of said customers' accounts."
 {¶ 4} The Securities and Exchange Commission ("SEC") also obtained a judgment in the amount of $125,784,311.94 against Gruttadauria for conduct arising out of the federal offenses. See United StatesSecurities and Exchange Comm. v. Gruttadauria (N.D.Ohio, Feb. 21, 2002), Case No. 1:02 CV 324.
 {¶ 5} The federal plea agreement detailed how Gruttadauria made unauthorized withdrawals of over $54 million from customer accounts using forged letters of authorization, acting with knowledge that his conduct perpetrated a fraud on his clients and was unlawful. Using his position as branch manager for various investment companies, Gruttadauria forged client *Page 3 
statements to misappropriate as much as $105,784,311.94 between 1990 and 2002. These fraudulent activities earned Gruttadauria close to $21 million in compensation.
 {¶ 6} The Fazios became clients of Gruttadauria and invested heavily with him, induced in large part because of the rate of return shown by the fraudulent statements prepared by Gruttadauria. The Fazios brought this complaint seeking compensatory and punitive damages for breach of fiduciary duty, fraud, negligent misrepresentation, conversion and promissory estoppel. They calculated damages based on the value of the subject accounts, lost investment gains, funds spent for fees associated with estate and financial planning, the costs of loans required to meet financial obligations that could not be paid due to the loss of their investment principal, and costs associated with tax consequences for nonexistent financial gains.
 {¶ 7} Gruttadauria, acting pro se, did not answer the complaint, but instead filed a motion to dismiss the complaint on grounds that the Fazios' claims had been previously and fully adjudicated in a "special arbitration proceeding" between them and the various investment companies who employed Gruttadauria. Gruttadauria also asked the court to stay the proceedings and refer the matter to arbitration consistent with arbitration agreements signed by the Fazios. The court denied both motions. It then conducted a trial ex parte, *Page 4 
noting that Gruttadauria, who was incarcerated at the time, had made no request to appear at trial or continue the trial date.
 I {¶ 8} Gruttadauria first argues that the court erred by denying his motion to dismiss the complaint because an arbitration award and decision rendered by the National Association of Securities Dealers ("NASD") between the Fazios and those employers for whom he worked constituted a full and final adjudication of the Fazios' claims against him.
 A {¶ 9} Gruttadauria's status as a pro se litigant does not entitle him to special consideration in this court. "`It is well established that pro se litigants are presumed to have knowledge of the law and legal procedures and that they are held to the same standard as litigants who are represented by counsel." State ex rel. Fuller v. Mengel,100 Ohio St.3d 352, 2003-Ohio-6448, ¶ 10, quoting Sabouri v. Ohio Dept. of Job Family Servs. (2001), 145 Ohio App.3d 651, 654. "Pro se litigants are not entitled to greater rights, and they must accept the results of their own mistakes." Williams v. Lo, Franklin App. No. 07AP-949,2008-Ohio-2804, ¶ 18, citing City of Whitehall v. Ruckman, Franklin App. No. 07AP-445, 2007-Ohio-6780, ¶ 21. *Page 5 
 {¶ 10} Gruttadauria did not state a legal basis for his motion to dismiss, although we assume that he raised it under Civ. R. 12(B)(6). In order to prevail on a Civ. R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted, it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling it to recover. Mitchell v. Lawson Milk Co. (1989),40 Ohio St.3d 190, 192. A court is confined to the averments set forth in the complaint and cannot consider outside evidentiary materials. Hanson v.Guernsey Cty. Bd. of Commrs., 65 Ohio St.3d 545, 548, 1992-Ohio-73. The court must presume that all factual allegations set forth in the complaint are true and must make all reasonable inferences in favor of the nonmoving party. Mitchell, 40 Ohio St.3d at 192. Because decisions on Civ. R. 12(B)(6) motions do not involve findings of fact, we do not defer to the trial court's decision. Murray Energy Corp. v. City ofPepper Pike, Cuyahoga App. No. 90420, 2008-Ohio-2818, ¶ 12.
 B {¶ 11} On the same day the United States filed criminal charges against Gruttadauria, the Fazios commenced a civil action in federal court against him and several brokerage houses, including Lehman Brothers, Inc., Lehman Brothers Holdings, Inc., and S.G. Cowen Securities, in a case styled Fazio v. Gruttadauria (N.D.Ohio), Case No. 1:02 CV 157. The Fazios eventually *Page 6 
dismissed Gruttadauria without prejudice and proceeded against the brokerage houses. When the investment companies invoked the terms of arbitration clauses contained in their contracts, the Fazios resisted arbitration on grounds that the clauses were not binding in light of the fraud perpetrated by Gruttadauria. The district court refused to enforce the arbitration clauses, but the United States Court of Appeals for the Sixth Circuit reversed, ruling that it was "far from clear" that Gruttadauria's conduct was unforeseeable and that the breadth of the arbitration clauses in question favored arbitration. See Fazio v. LehmanBros., Inc. (C.A. 6, 2003), 340 F.3d 386, 395-396.
 {¶ 12} Following remand, the Fazios and the brokerage houses agreed to voluntarily submit to a Special Arbitration Proceeding ("SAP"). In related civil proceedings before the New York Stock Exchange ("NYSE"), SG Cowen and Lehman Brothers agreed to participate in the SAP. The preamble to the SAP states "[t]his process is completely voluntary on the part of qualifying former customers, and does not preclude former customers who elect not to participate in this process from pursuing any other remedies in any forum." Section 7 of Appendix A to the SAP states:
 {¶ 13} "Other Proceedings. Qualifying Customers who elect to take part in this process must unconditionally stay any other actions or proceedings seeking legal or equitable redress arising out of the same facts and circumstances *Page 7 
described in the Statement of Claim, and dismiss with prejudice any such action or proceeding after a decision or award is rendered by the arbitrator and, if necessary, satisfied by the Firm(s)."
 {¶ 14} The SAP was entirely voluntary and dispositive of all claims against the firms that might be asserted by qualifying customers. The Fazios invoked the SAP to the exclusion of other legal remedies and claimed nearly $23 million in damages. Lehman Brothers settled with the Fazios shortly after the start of the arbitration. The arbitration panel unanimously awarded the Fazios a total of $1.5 million against SG Cowen in the following amounts: $1.1 million to Carl Fazio; $300,000 to Irene Dugger Fazio (wife of Carl Fazio); and $100,000 to Fazio Investment One. There was no award to either Robert Fazio or Fazio Investment Three. The SAP also awarded $685,000 for attorney fees and $192,000 for expert witness fees. The awards were paid in full and the court ultimately granted SG Cowen's motion to dismiss the action with prejudice as required by the terms of the SAP.
 C {¶ 15} The SAP applied to SG Cowen and "qualifying former customers of Frank Gruttadauria." The SAP defined "qualifying customers" as "former customers of Frank Gruttadauria from whom Gruttadauria misappropriated funds or securities (including unauthorized transfer) and/or who received *Page 8 
falsified account documents from or at the direction of Gruttadauria (whether or not they also received genuine account documents) during that period that Gruttadauria was employed at [SG Cowen]." The SAP limited qualifying customers to naming as a respondent in the arbitration process only "those Firms at which Gruttadauria was employed when he misappropriated from Qualifying Customers any funds or securities (including unauthorized transfers) and/or provided falsified account documents to the Qualifying Customer."
 {¶ 16} Solely for the purposes of the SAP, SG Cowen agreed to waive its right to assert time bar principles of statutes of limitations or statutes of repose. It also, solely for the purposes of the SAP, agreed not to contest its liability for Gruttadauria's misappropriation of funds or securities, his alteration and use of account documents, his unauthorized changing of mail addresses, and SG Cowen's conduct in relation to any of Gruttadauria's unauthorized acts. The Fazios agreed that no punitive or exemplary damages would be available to them.
 {¶ 17} These provisions demonstrate that any claims made by the Fazios during the SAP were made against SG Cowen alone, and not against Gruttadauria. The SAP makes no mention of Gruttadauria's participation in the SAP. To the contrary, a full reading of the terms of the SAP shows that it applied only to the participating "firms" and their liability for Gruttadauria's *Page 9 
unauthorized acts. As the terms of the NYSE administrative proceeding made clear, the SAP was established to allow "potential victims of Gruttadauria's fraudulent acts" to receive a hearing and, if necessary, compensation from the member firms in an expedited manner. Gruttadauria was not mentioned as a participant in the SAP.
 {¶ 18} We likewise reject Gruttadauria's argument that the terms of the SAP required the Fazios to forego making any direct claims against him in "any other actions or proceedings seeking legal or equitable redress arising out of the same facts and circumstances described in the Statement of Claim." As previously noted, the SAP applied only between qualifying customers and the participating firms. There is nothing in the terms of the SAP that purported to bar qualifying customers from instituting actions directly against Gruttadauria.
 II {¶ 19} Gruttadauria next argues that the court erred by refusing to stay the proceedings and refer the matter to arbitration pursuant to the agreements of the parties. We do not reach the merits of this argument because we conclude that Gruttadauria did not file an appeal from the court's denial of his motion within 30 days as required by App. R. 4.
 {¶ 20} R.C. 2711.02(C) states that "an order under division (B) of this section that grants or denies a stay of a trial of any action pending arbitration *Page 10 
* * * is a final order * * *[.]" App. R. 4(A) requires a party to file a notice of appeal within 30 days of the entry of the order being appealed. Once the court either grants or denies a stay pending arbitration, the order becomes final and must be appealed if the party intends to challenge the court's decision. Schmidt v. BankersTitle Escrow Agency, Inc., Cuyahoga App. No. 88847, 2007-Ohio-3924, ¶ 11.
 {¶ 21} The court denied the motion to stay on March 16, 2007. Gruttadauria did not immediately appeal from that order, but instead, on April 24, 2007, asked the court for "leave of court to file an interlocutory appeal of order denying stay pending arbitration." The court denied leave on June 8, 2007. On June 14, 2007, Gruttadauria filed a motion to reconsider the denial of leave, but the court denied reconsideration. Gruttadauria did not thereafter appeal the order denying a stay and referring the matter to arbitration until after the ex parte trial. His failure to file a notice of appeal within 30 days of March 16, 2007, deprives us of jurisdiction to hear this issue.
 {¶ 22} In reaching this conclusion, we consider Gruttadauria's motion for leave to appeal to be a nullity. Because the order was immediately appealable upon its denial, the court's attempt to rule on leave had no effect. We therefore dismiss this part of the appeal. *Page 11 
 III {¶ 23} For his third assignment of error, Gruttadauria argues that the Fazios' claims are barred by the statutes of limitation and repose. We summarily overrule this assignment of error because "[a] statute of limitations is an affirmative defense that is waived unless pled in a timely manner." See State ex rel. Tubbs Jones v. Suster,84 Ohio St.3d 70, 75, 1998-Ohio-275. The statute of repose is likewise considered an affirmative defense. See Groch v. Gen. Motors Corp., 117 Ohio St.3d 192,2008-Ohio-546, ¶ 251. Gruttadauria did not answer the complaint, so he has waived the right to assert the affirmative defenses of statute of limitations and statute of repose. State ex rel. Zollner v. Indus. Comm.of Ohio, 66 Ohio St.3d 276, 278, 1993-Ohio-49.
 IV {¶ 24} Finally, Gruttadauria argues that the court acted in an arbitrary and capricious manner, allowing his motions to pend for months while quickly ruling on the Fazios' motion and otherwise place obstacles in his path.
 {¶ 25} The Chief Justice of the Ohio Supreme Court has exclusive jurisdiction to determine a claim that a trial judge is biased or prejudiced. Jones v. Billingham (1995), 105 Ohio App.3d 8, 11, 663
N.E.2d 657. If a litigant wishes to challenge the objectivity of a common pleas court judge, the litigant must file an affidavit of disqualification as required by R.C. 2701.03. We are therefore *Page 12 
without jurisdiction to address Gruttadauria's claims of bias. SeeBeer v. Griffith (1978), 54 Ohio St.2d 440, 441-442.
Judgment affirmed in part and dismissed in part.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 SEAN C. GALLAGHER, P.J., and PATRICIA ANN BLACKMON, J., CONCUR *Page 1