[Cite as *State v. Powell*, 2024-Ohio-4923.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 30053 |
| | : | |
| v. | : | Trial Court Case No. 23-CRB-1744 |
| | : | |
| ALEXIS POWELL | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on October 11, 2024

. . . . . . . . . . .

ARVIN S. MILLER, Attorney for Appellant

ASHLEY THOMAS, Attorney for Appellee

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-Appellant, Alexis Powell, appeals from a judgment convicting her of violating a protection order, following her no contest plea.

{¶ 2} According to Powell, the domestic relations court that issued the protection

order lacked subject matter jurisdiction. This claim is based on the fact that the domestic relations court vacated the protection order under Civ.R. 60(B) due to the victim's misrepresentation about the parties' status. Powell therefore contends the order was "void ab initio" and could not form the basis for a criminal charge.

{¶ 3} After reviewing the record, we conclude the trial court did not err in overruling Powell's motion to dismiss for lack of subject matter jurisdiction. The protection order (which was issued by agreement of both Powell and the victim) was valid when Powell's violation occurred. Although the domestic relations court later vacated the order, that did not deprive it of subject matter jurisdiction. Subject matter jurisdiction concerns a court's power to entertain and adjudicate a particular class of cases and is decided without regard to rights of individual parties who are involved in a particular case.

{¶ 4} Based on R.C. 2301.03(F) and R.C. 2305.011, the domestic relations court had subject matter jurisdiction over petitions for protection orders brought under R.C. 3113.31. The issue that caused the order to be vacated concerned the individual parties, and the act of vacating the order did not cause it to be void ab initio. During the time the order was in effect, Powell was required to obey it and failed to do so. As a result, Powell was properly found guilty of violating the order. Accordingly, the judgment of the trial court will be affirmed.

## I. Facts and Course of Proceedings

{¶ 5} On May 22, 2023, a complaint was filed in municipal court charging Powell with having violated a protection order, a first-degree misdemeanor under R.C.

2919.27(A)(1). The alleged violation date was May 21, 2023. Powell pled not guilty, counsel was appointed, and Powell was released on her own recognizance, conditioned on having no contact with B.W., the alleged victim.

{¶ 6} In July 2023, Powell filed a motion to dismiss the criminal charge, contending that the domestic relations court lacked jurisdiction to issue a protection order because Powell and B.W. had never resided together and had no familial relationship based on consanguinity or affinity. As to this point, the Montgomery County Common Pleas Court, Domestic Relations Division, had issued a consent agreement and protection order on March 16, 2023, pursuant to R.C. 3113.31. The order in question was attached to the motion to dismiss, had been signed by both B.W. and Powell, and indicated on its face that they were sisters. According to the protection order, it was issued after a March 15, 2023 hearing at which both parties were present. The order restrained Powell from having contact with B.W. until February 27, 2028.

{¶ 7} On August 9, 2023, the State responded to Powell's motion to dismiss. The trial court then denied the motion in December 2023 and ultimately set trial for January 29, 2024. Shortly before trial, Powell asked the court to reconsider its decision on the motion to dismiss, based on the fact that the domestic relations court had vacated the protection order on January 25, 2024. According to Powell's motion, the domestic relations court found, under Civ.R. 60(B), that it had lacked jurisdiction to issue the order due to fraud, misrepresentation, or other misconduct of an adverse party, i.e., B.W. had misrepresented her relationship with Powell. Motion for Reconsideration (Jan. 26, 2024), p. 1-2.

{¶ 8} On the scheduled trial date, the trial court denied the motion for reconsideration, and Powell elected to plead no contest to the criminal charge. Transcript of Proceedings ("Tr."), 27. During the plea hearing, the court informed Powell that a no-contest plea, while not a direct admission of guilt, would be "an admission of the facts." *Id.* at 29. Powell acknowledged this and pled no contest to the charge of violating a protection order. *Id.* at 29-30. Following the plea, the court found Powell guilty, imposed a five-day jail term, gave Powell credit for four days in jail, and suspended one day of the jail time. The court also placed Powell on non-reporting probation not to exceed six months and waived any fines and court costs. *Id.* at 30-31 and 34-35.

{¶ 9} The written plea agreement and waiver of rights and the court's judgment entry finding Powell guilty and imposing sentence were filed the same day. Powell then timely appealed from the judgment.

## II. Subject Matter Jurisdiction

{¶ 10} Powell's first assignment of error states that:

The Trial Court Erred by Not Granting the Defendant's Motion to Dismiss the Charge of Violating a Restraining Order, When the Restraining Order Was Void Ab Initio Since the Domestic Relations Court Lacked Subject Matter Jurisdiction to Issue the Order When the Applicant for the Order Lied About Being a Family Member of the Accused.

{¶ 11} Under this assignment of error, Powell contends that because she and B.W. did not fit within the definition of family members under R.C. 3113.31, the domestic

relations court lacked subject matter jurisdiction to grant a protection order. Powell further argues that while she signed a consent agreement, subject matter jurisdiction cannot be waived, and she therefore could not be prosecuted for violating the order.

{¶ 12} In response, the State maintains that the order was not invalid on its face; as a result, Powell could be prosecuted and convicted for violating the order while it was in effect. The State further contends that Powell voluntarily entered into a consent agreement and should not be excused for willfully violating an order to which she agreed even if the order was later determined to be incorrect.

{¶ 13} There is no real dispute about the underlying facts here. For purposes of considering the appeal, we note the following facts: (1) when requesting a protection order, B.W. falsely indicated she and Powell were sisters; (2) Powell was unrepresented by counsel and signed a consent agreement and protection order which stated the two parties were sisters, when they were not; (3) Powell agreed to the protection order; (4) Powell violated the existing order in May 2023; (5) the domestic relations court vacated the protection order per Civ.R. 60(B) on January 25, 2024, based on B.W.'s fraud or misrepresentation; (6) the domestic relations court concluded it lacked jurisdiction over the matter; (7) Powell pled no contest to the violation of the order, thereby admitting the facts as alleged in the criminal complaint; and (7) the trial court found Powell guilty as charged.

{¶ 14} Under R.C. 3113.31, a domestic violence victim may seek relief on his or her own behalf or on behalf of other family or household members by filing a petition with the domestic relations court. As relevant here, the party seeking relief must state that

"the respondent engaged in domestic violence against a household or family member," must describe the nature and extent of the violence, and must state "the relationship of the respondent to the petitioner, and to the victim if other than the petitioner." R.C. 3113.31(C)(1) and (2).[1] The statute defines a "family or household member" as any of various persons who reside with or have lived with the respondent, including "[a] parent, a foster parent, or a child of the respondent, or another person related by consanguinity or affinity to the respondent." R.C. 3113.31(C)(3)(a)(ii).

{¶ 15} The statute does not define the relevant terms, but "the definition of 'consanguinity' . . . is: 'Kinship; blood relationship; the connection or relation of persons descended from the same stock or common ancestor.' " *State v. Morton*, 1994 WL 49941, *3 (3d Dist. Feb. 13, 1994), quoting *Black's Law Dictionary* (6th Ed. 1990). On the other hand, "relationships by affinity are generally those created by marriage, such as father-in-law or mother-in-law, or stepparent." *In re K.P.R.*, 2011-Ohio-6114, ¶ 24 (12th Dist.), citing *In re LaPiana*, 2010-Ohio-3606 (8th Dist.) (Rocco, P.J., dissenting on a separate issue). *See also In re R.V.*, 2010-Ohio-5050, ¶ 13-14 (2d Dist.) (defining "affinity" in the same way for purposes of deciding if a grandparent was a "relative" entitled to seek visitation under R.C. 3109.11).

{¶ 16} After holding an ex parte or full hearing, a court "may grant any protection order, with or without bond, or approve any consent agreement to bring about a cessation of domestic violence against the family or household members. . . ." R.C. 3113.31(E)(1).

---

[1] R.C. 3113.31 was amended shortly after the protection order was filed in the underlying case, but before the violation occurred. However, there is no difference in the relevant parts of the statute. *See* Am.Sub.S.B. 210, 2022 Ohio Laws 137, eff. Mar. 23, 2023.

This statutory proceeding is governed by the Ohio Rules of Civil Procedure, and orders issued, other than ex parte orders, are final appealable orders. R.C. 3113.31(G)(1). Finally, R.C. 3113.31(L)(1) provides that persons who violate protection orders or consent agreements may be prosecuted under R.C. 2919.27.

{¶ 17} As relevant here, R.C. 2919.27(A) states that: "No person shall recklessly violate the terms of any of the following: (1) A protection order issued or consent agreement approved pursuant to section 2919.26 or 3113.31 of the Revised Code." For first offenses, the crime is a first-degree misdemeanor, which is the degree of crime with which Powell was charged. *See* R.C. 2919.27(B)(2).

{¶ 18} As noted, Powell contends she did not waive any jurisdictional arguments because subject matter jurisdiction may be asserted at any time. "It is true that the issue of subject-matter jurisdiction can be challenged at any time and that a court's lack of subject-matter jurisdiction renders that court's judgment void ab initio." *Bank of Am., N.A. v. Kuchta*, 2014-Ohio-4275, ¶ 17, citing *Pratts v. Hurley*, 2004-Ohio-1980, ¶ 11. However, in *Kuchta*, the court observed that "[t]he general term 'jurisdiction' can be used to connote several distinct concepts, including jurisdiction over the subject matter, jurisdiction over the person, and jurisdiction over a particular case." *Id.* at ¶ 18, citing *Pratts* at ¶ 11-12.

{¶ 19} In order to clarify this term, which had several meanings that had often been confused, the court first noted that: "Subject-matter jurisdiction is the power of a court to entertain and adjudicate a particular class of cases." *Id.* at ¶ 19, citing *Morrison v. Steiner*, 32 Ohio St.2d 86, 87 (1972). The court then stressed that "[a] court's subject-

matter jurisdiction is determined without regard to the rights of the individual parties involved in a particular case." *Id.*, citing *State ex rel. Tubbs Jones v. Suster*, 84 Ohio St.3d 70, 75 (1998).

{¶ 20} In contrast, "[a] court's jurisdiction over a particular case refers to the court's authority to proceed or rule on a case that is within the court's subject-matter jurisdiction. *Id.*, citing *Pratts* at ¶ 12. "This latter jurisdictional category involves consideration of the rights of the parties. If a court possesses subject-matter jurisdiction, any error in the invocation or exercise of jurisdiction over a particular case causes a judgment to be voidable rather than void." *Id.*

{¶ 21} Consequently, the first consideration here is the jurisdiction of the domestic relations court that granted the protection order. "The General Assembly defines the jurisdiction of the courts of common pleas and their respective divisions." *Pula v. Pula-Branch*, 2011-Ohio-2896, ¶ 6, citing Ohio Const., art. IV, § 4(A) and (B). Specifically, this section of the Constitution establishes common pleas courts and divisions of those courts, but also states they will have original jurisdiction "as may be established by law." *Id.* at § 4(A). "The 'provided by law' qualification means that there must be a statutory basis for jurisdiction." *State ex rel. Reynolds v. Kirby*, 2023-Ohio-782, ¶ 14.

{¶ 22} As to this point, R.C. 3105.011(A) provides that "[t]he court of common pleas including divisions of courts of domestic relations, has full equitable powers and jurisdiction appropriate to the determination of all domestic relations matters." Under 3105.011(B), "domestic relations matters" means both of the following things:

> (1) Any matter committed to the jurisdiction of the division of

domestic relations of common pleas courts under section 2301.03 of the Revised Code, as well as a complaint for child support and allocation of parental rights and responsibilities, including the enforcement and modification of such orders;

(2) Actions and proceedings under Chapters 3105., 3109., 3111., 3113., 3115., 3119., 3121., 3123., 3125., and 3127. of the Revised Code, actions pursuant to section 2151.231 of the Revised Code, all actions removed from the jurisdiction of the juvenile court pursuant to section 2151.233 of the Revised Code, and all matters transferred by the juvenile court pursuant to section 2151.235 of the Revised Code.

{¶ 23} "R.C. 2301.03 establishes the jurisdiction of the state's domestic relations courts in separate subsections; their jurisdiction can vary by county." *Pula,* 2011-Ohio-2896, at ¶ 6. As relevant here, R.C. 2301.03(F)(1) states that, in Montgomery County, judges in the division of domestic relations shall "exercise the same powers and jurisdiction" as judges "in the court of common pleas of Montgomery county" and "shall have assigned to them all divorce, dissolution of marriage, legal separation, and annulment cases." The Supreme Court of Ohio has described exercising the " 'same powers and jurisdiction' " to be "not a limiting provision but rather a specific grant of authority." *Pula* at ¶ 6. Thus, in the matters specifically assigned to the domestic relations division, like divorce, that division would have exclusive original jurisdiction; in other instances of "domestic relations matters," like the specific statutes listed in R.C. 3105.011(2), common pleas courts, including the domestic relations division, would have

full equitable powers and jurisdiction related to these matters.

{¶ 24} In *Pula*, the court stressed that a crucial distinction exists between "exclusive original jurisdiction and nonexclusive original jurisdiction." *Id.* at ¶ 7, citing *Brookbank v. Gray*, 74 Ohio St.3d 279 (1996), paragraph three of the syllabus. Thus, in *Brookbank*, the court decided that while juvenile courts had original jurisdiction to decide paternity of children born out of wedlock, they had not been given exclusive original jurisdiction. Consequently, in wrongful death cases, the common pleas court could also litigate paternity. *Id.*

{¶ 25} Because R.C. Chap. 3113 is specifically listed in R.C. 2305.011(B)(2), the Domestic Relations Division of the Montgomery County Common Pleas Court clearly had subject matter jurisdiction over claims brought under that chapter. According to Powell, however, "the domestic relations court's jurisdiction is contingent on there being a family relationship between parties." Powell Brief, p. 5, citing R.C. 3113.31(B). However, nothing in R.C. 3113.31 states this is a "jurisdictional" prerequisite. The domestic relations court already has jurisdiction under R.C. 3105.011(B)(2).

{¶ 26} It is true that R.C. 3113.31(B) states that "[t]he court has jurisdiction over all proceedings under this section." In this regard, however, the word "court" is defined as part of the same statute to mean "the domestic relations division of the court of common pleas in counties that have a domestic relations division and the court of common pleas in counties that do not have a domestic relations division, or the juvenile division of the court of common pleas of the county in which the person to be protected by a protection order issued or a consent agreement approved under this section resides if the

respondent is less than eighteen years of age." R.C. 3113.31(A)(2). The reference to "jurisdiction" in R.C. 3113.31(B) simply means that the specific courts listed in the statute, including common pleas courts, have jurisdiction over actions brought under R.C. 3113.31. This is likely because, as referenced in the statute, not all counties in Ohio have a separate domestic relations division. And a number of counties in Ohio have only one common pleas judge. *See* R.C. 2301.02. In that instance the general division judge and domestic relations judge "are one and the same." *E.g., Devault v. Devault*, 2004-Ohio-976, ¶ 21 (5th Dist.).

{¶ 27} In any event, as applied here, the domestic relations division for Montgomery County had subject matter jurisdiction over petitions for protection orders brought under R.C. 3113.31. Powell's belated defense in that court (asserted through her Civ.R. 60(B) motion) was related to the rights of the parties in the particular case before the court, i.e., Powell claimed the protection order was improperly granted because she was not B.W.'s sister. As a result, any defect in the domestic relations proceedings did not result in a lack of subject matter jurisdiction or a "void ab initio" judgment.

{¶ 28} As noted, Powell filed a Civ.R. 60(B) motion based on fraud or misrepresentation. That resulted in the protection order being vacated, but the order still had to be obeyed while it was in effect. *See State v. Phipps*, 2022-Ohio-1188 (2d Dist.).

{¶ 29} In *Phipps*, the defendant was convicted of having violated a protection order. On appeal, the defendant argued the order was invalid because it was issued on an outdated form, and his phone calls to the victim therefore "did not violate anything." *Id.* at ¶ 11. In considering this claim, we remarked that:

Even if the domestic-relations court used a form that was one week out-of-date, the fact remains that Phipps had been served with a court-issued protection order prohibiting him from contacting his girlfriend. At best, we believe the defect about which he complains conceivably could make the order voidable, not void. If so, he cannot challenge its validity in a criminal case involving his prosecution for violating it.

*Id.* at ¶ 11, fn. 1, citing *State v. Ybarra*, 2016-Ohio-5761, ¶ 11-13 (5th Dist.), and *City of Westlake v. Patrick*, 2007-Ohio-1307, ¶ 7 (8th Dist.).

**{¶ 30}** The same reasoning applies here. Furthermore, *Phipps* is factually similar to the case before us. In *Phipps*, the defendant's girlfriend obtained a protection order against him, and he then called her six times from jail. During that time, the girlfriend asked for the protection order to be dismissed, and it was then terminated. *Id.* at ¶ 4. The trial court found the defendant guilty of three contacts that occurred before the girlfriend asked for the order to be terminated and not guilty of the three that occurred afterward. We affirmed the convictions. *Id.* at ¶ 5, 11-14, and 19. Applying the same reasoning here, Powell would still be guilty of violating the protection order because she did so before it was vacated.

**{¶ 31}** Despite acknowledging that parties must follow orders while they are effective, Powell urges us to follow the decision in *Rocky River v. Bakos*, 2015-Ohio-4366 (8th Dist.). Powell Brief at p. 6. In *Bakos*, the defendant was charged with violating a protective order issued on behalf of a former neighbor and the neighbor's wife. Apparently, the defendant lost custody of her children and had been harassing the

neighbors, who had legal guardianship of the children. The protection order was granted only on behalf of the neighbors, not the children. As here, the defendant moved to dismiss the criminal charges before trial because she had never lived with the neighbors. After the trial court denied the motion, a jury found the defendant guilty of two violations of the order; she then appealed. *Bakos* at ¶ 4-6.

{¶ 32} The Eighth District Court of Appeals concluded the county "court did not have subject matter jurisdiction to issue the order against Bakos under R.C. 3113.31 because, on its face, R.C. 3113.31 did not apply to Bakos and [the neighbors'] relationship." *Id.* at ¶ 14. In light of this fact, the court of appeals held that the protection order was "void ab initio" and a nullity, and the criminal case based on violating the order therefore was also a "nullity." *Id.* at ¶ 16.

{¶ 33} As a preliminary point, *Bakos* is inconsistent with the clarification in *Kuchta*, which was issued about a year earlier. *Kutcha*, 2014-Ohio-4275. In view of *Kuchta*, the protection order in *Bakos*, even if incorrect, was not void based on lack of subject matter jurisdiction because the court issuing it clearly had jurisdiction over that class of case. The fact that the order was incorrect involved a matter strictly between the parties. Consequently, the order would only have been potentially voidable, not void. The court of appeals may have been unaware of *Kuchta*, as it is not mentioned in the decision. Instead, the cases the court cited ranged from 1972 to 2012. *Bakos*, 2015-Ohio-4366, at ¶ 13-17. The same type of flaws exist in Powell's discussion of subject matter jurisdiction. *See* Powell Brief at p. 6-7.

{¶ 34} In her brief, Powell did mention a later case, claiming that our district had

"acknowledged the holding in *Bakos.*" *Id.* at p. 7, citing *State v. Lawrence*, 2016-Ohio-7626 (2d Dist.). However, in that case, we did not follow *Bakos* and did not even discuss it in any depth.

{¶ 35} *Lawrence* involved a post-conviction petition for relief which alleged that the jury verdict forms were defective. The trial court denied the petition based on res judicata, as the defendant did not raise this issue on direct appeal. *Id.* at ¶ 1-2. The case was the fourth appeal to our court between 2002 and 2016, and the defendant had also filed an unsuccessful habeas action in federal court. *Id.* at ¶ 2-4. We ultimately found the alleged defect in the forms was not a jurisdictional issue and that res judicata applied to bar the post-conviction petition. *Id.* at ¶ 6 and 14-16.

{¶ 36} Our decision correctly noted general authority concerning the fact that lack of subject matter jurisdiction causes a judgment to be void while lack of jurisdiction over a particular case " 'merely renders the judgment voidable.' " *Id.* at ¶ 6, quoting *Pratts*, 2004-Ohio-1980, at ¶ 11. We then discussed the law relating to voidable errors, which were barred in post-conviction cases based on res judicata, and "void" sentences, which at that time could be reviewed on direct appeal or through collateral attack. *Id.* at ¶ 11, citing *State v. Parson*, 2012-Ohio-730, ¶ 8 (2d, Dist.), and *State v. Fischer*, 2010-Ohio-6238, paragraph one of the syllabus, *overruled by State v. Harper*, 2020-Ohio-2913.[2]

_____

[2] In *Harper*, the Supreme Court of Ohio again stressed the distinction between subject matter jurisdiction, which involves a court's power to hear certain classes of cases, and errors in exercising jurisdiction, which make decisions voidable. *Id.* at ¶ 26, citing *Pratts* at ¶ 12 and 21. After a lengthy discussion of the history of the void/voidable doctrine in sentencing cases, the court overruled its precedent, including *Fischer,* "to the extent that it holds that the failure to properly impose postrelease control in the sentence renders that portion of a defendant's sentence void." *Id.* at ¶ 20-40. Consequently, sentencing errors in imposing post-release control became voidable and barred by res judicata if not

{¶ 37} In *Lawrence*, we discussed the subject of voidable and void errors and then cited a few examples where courts had allowed challenges on subject matter jurisdiction to succeed. *Bakos* was one of these cases, but we simply cited it, as we did with the other cases, without any substantive discussion. *See Lawrence*, 2016-Ohio-7626, at ¶ 12. We next remarked that "[o]ther attempts to frame a post-conviction motion as an attack on the court's subject-matter jurisdiction have failed" and cited some examples of that situation as well. *Id.* at ¶ 13. Again, we did not discuss these cases, nor did we agree or disagree with any cited cases; we merely noted them as examples. We then found "no support for the proposition that a defect in a jury verdict form affects a trial court's subject-matter jurisdiction," and we affirmed the decision to overrule the post-conviction petition on res judicata grounds. *Id.* at ¶ 14-16.

{¶ 38} Based on the above discussion, *Lawrence* provides no reason to either apply or follow *Bakos*. More importantly, *Bakos* itself distinguished a case from its own district that is factually much more similar to what occurred here. *See Bakos*, 2015-Ohio-4366, at ¶ 17, discussing *Patrick*, 2007-Ohio-1307.

{¶ 39} In *Patrick*, the trial court dismissed a criminal charge against the defendant for violating a protection order. In that case, a protective order had been issued but was later found to have been invalid because the hearing on the order was not timely held or decided. *Patrick* at ¶ 1-4. The Eighth District reversed the trial court, however, agreeing with the prosecution that the defendant had been obliged to follow the order even though it was later found to be invalid. *Id.* at ¶ 5. In distinguishing *Patrick*, the Eighth District

asserted on direct appeal. *Id.* at ¶ 42.

stated that:

> In *Patrick*, the defendant was convicted of violating a protection order issued under R.C. 2903.214 [relating to protection orders in stalking situations]. The order was facially valid at the time the defendant was alleged to have violated it, but the order was later determined to be invalid. This court held that because the trial court had jurisdiction to issue the order, it was not void on its face, and the defendant was therefore required to comply with the order and could be charged for violating it. In this case, the order against *Bakos* was never valid because the court lacked jurisdiction to issue it based on the nature of her relationship with [the petitioner].

*Bakos*, 2015-Ohio-4366, at ¶ 17-18.

**{¶ 40}** Although we have disagreed with *Bakos's* jurisdictional reasoning, that is irrelevant here, because the current case, like *Patrick*, involves an order that was "facially valid" when it was issued. As noted, the protection order stated that Powell's relationship to the petitioner, B.W., was that of "sister." Motion to Dismiss (July 31, 2023), p. 3, and attached protection order from Montgomery C.P. No. 2023 DV 00273, p. 1. While this description of "sister" was later revealed to be incorrect, the order clearly was not void on its face, and Powell was properly charged with a violation even if we agreed with *Bakos* (which we do not).

**{¶ 41}** Even if this were otherwise, *Bakos* is further distinguishable because Powell agreed to the protection order. "A consent order is a contract between the parties based upon the agreements reached by those parties." *State ex rel. DeWine v. Washington*

*Court House*, 2014-Ohio-3557, ¶ 15 (12th Dist.), citing *Save the Lake v. Hillsboro*, 2004-Ohio-4522 (4th Dist.). "Further, although the consent decree is considered a contract between the parties, it is also an order of the court." *State ex rel. DeWine v. Miller*, 2011-Ohio-2107, ¶ 17 (4th Dist.). *See also Infinite Sec. Solutions, L.L.C. v. Karam Properties, II, Ltd.*, 2015-Ohio-1101, ¶ 27 (noting consent orders are enforceable by courts). Powell was bound to follow the order to which she had agreed.

**{¶ 42}** Moreover, Powell was specifically warned that:

> Violating the attached Protection Order is a crime, punishable by incarceration, fine or both and may cause the revocation of your bond or result in a contempt of court citation against you. . . . Only the Court may change or end this Protection Order. Unless the Court changes or ends this Order, you may be arrested for violating this Protection Order. **YOU ACT AT YOUR OWN RISK IF YOU DISREGARD THIS WARNING**.

(Emphasis in original.) Form 19-C attached to the Protection Order.

**{¶ 43}** The Protection Order itself contained a similar warning. This warning was located right above Powell's signature, where she agreed to the terms of the order. Protection Order at p. 6. These warnings could not have been more clear, and Powell was aware of the consequences of violating the order prior to any court-authorized change.

**{¶ 44}** Accordingly, the trial court did not err in overruling Powell's motion to dismiss. The first assignment of error is overruled.

### III. No Contest Plea

{¶ 45} Powell's second assignment of error states that:

The Trial Court Erred by Finding the Defendant Guilty on a No Contest Plea When the Restraining Order Was Void and the Domestic Relations Court Vacated the Order Due to Lack of Jurisdiction.

{¶ 46} Under this assignment of error, Powell contends that the trial court erred in finding her guilty when she presented evidence that the protection order was void and that the domestic relations court lacked jurisdiction. While conceding that she pled no contest, Powell argues the trial court should not have ignored the fact that the protection order was void.

{¶ 47} Based on our prior discussion, the domestic relations court had subject matter jurisdiction over the protection order when it was issued, and the later act of vacating the order did not excuse Powell from following the order when it was in effect.

{¶ 48} As to the no contest plea, R.C. 2937.07 states: "A plea to a misdemeanor offense of 'no contest' or words of similar import shall constitute an admission of the truth of the facts alleged in the complaint and that the judge or magistrate may make a finding of guilty or not guilty from the explanation of the circumstances of the offense."

{¶ 49} "R.C. 2937.07 does not define the term 'explanation of circumstances' as it is there used." *State v. Keplinger*, 1998 WL 864837, *3 (2d Dist. Nov. 13, 1998). "[A] plea of no contest is an admission by the defendant to the facts alleged in the complaint. In the ordinary case – that is, when the complaint properly alleges the elements of a crime – such an admission provides sufficient evidence for a conviction. After all, when a

defendant has admitted all the facts that constitute a crime, there necessarily is sufficient evidence for a conviction." *Girard v. Giordano*, 2018-Ohio-5024, ¶ 17, citing Crim.R. 11 and R.C. 2937.07. "The explanation-of-circumstances requirement does, however, provide a degree of protection for the defendant. In essence, it allows a judge to find a defendant not guilty or refuse to accept his plea when the uncontested facts do not rise to the level of a criminal violation." (Citations omitted.) *Id.* at ¶ 18. This is not such a case.

**{¶ 50}** Here, the complaint alleged that Powell had violated a protection order on May 21, 2023, and also recited the elements of the crime. During the sentencing hearing, the State recited factual details of the violation, and Powell admitted these facts, which included calling and threating B.W. Powell also admitted that "later that evening. . . when [she] went to jail, she called the victim, [B.W.] on the phone. She had . . . her boyfriend, call the victim on the phone and she talked with the victim to get her to drop the charges and not show up." Tr. at 30. Given that Powell had agreed to a protection order and promptly violated it more than once, the explanation of circumstances was sufficient, and it demonstrated that Powell was guilty as charged. Again, for the reasons previously stated, the trial court did not err in failing to find the protection order void. Consequently, the second assignment of error is overruled.

## IV. Conclusion

**{¶ 51}** Both of Powell's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, J. and LEWIS, J., concur.