[Cite as *Combs v. Sherwin-Williams Co.*, 2026-Ohio-562.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

BRETT COMBS,                                    :

    Plaintiff-Appellant,                 :

    v.                                              :

THE SHERWIN-WILLIAMS                    :
COMPANY,                                          :

    Defendant-Appellee.                :

No.  115175

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED
**RELEASED AND JOURNALIZED:**  February 19, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No.  CV-25-111649

---

### *Appearances:*

Brett Combs, *pro se.*

Olgetree, Deakins, Nash, Smoak & Stewart, P.C., John
Gerak, and Jeffrey J. Moyle, *for appellee.*

EMANUELLA D. GROVES, J.:

{¶ 1}  Plaintiff-appellant Brett Combs ("Combs"), pro se, appeals the trial court's contempt order.  Upon review, we affirm the trial court's decision finding him in contempt of court.

## I.    Facts and Procedural History

{¶ 2}    In February 2025, Combs — who was then represented by counsel — filed a four-count complaint against The Sherwin-Williams Company ("Sherwin-Williams"), asserting claims for declaratory judgment, breach-of-contract, abuse of process, and tortious interference.  In response, Sherwin-Williams filed a certified answer and counterclaim, asserting causes of action for misappropriation of trade secrets under both Ohio and federal law, breach of contract, promissory estoppel, conversion, unjust enrichment, and abuse of process.

{¶ 3}    Therein, Sherwin-Williams alleged that Combs entered into an agreement after he was terminated in exchange for severance payments.  That agreement — which was attached to the answer and counterclaim as an exhibit — defined and regulated the handling and return-of-work product, proprietary and confidential business information, and trade secrets.  By executing the agreement, Combs agreed that any work product was "the sole and exclusive property" of Sherwin-Williams and he would "cooperate and perform all actions reasonably requested by [Sherwin-Williams] to establish, confirm, and  protect [its] right, title, and interest in such [w]ork [p]roduct."  Combs also agreed that he would not "make any unauthorized disclosure or use" of proprietary and confidential business information and trade secrets and would "take all necessary and appropriate steps to safeguard . . . and protect it against disclosure, misappropriation, misuse, loss, and theft."

{¶ 4} Sherwin-Williams further alleged that Combs breached the agreement by posting certain information on his personal website for pecuniary gain following his termination. Sherwin-Williams sent a letter to Combs, demanding the removal of this information from his personal website. Sherwin-Williams also informed Combs that it considered the postings to be a breach of the agreement, thereby ceasing its obligation to pay any remaining severance. Despite repeated requests, Combs refused to remove the information from his website and, instead, added more details — making Sherwin-Williams' proprietary and confidential business information and trade secrets publicly available to anyone, including its competitors.

{¶ 5} Along with its answer and counterclaim, Sherwin-Williams filed a motion for a temporary restraining order and preliminary injunction, requesting that Combs be (1) enjoined from using, disclosing, or disseminating Sherwin-Williams' proprietary and confidential business information and trade secrets; (2) ordered to remove all such information from his website; and (3) ordered to preserve all data on computers or devices accessed by Combs after his termination and submit them for forensic review. Combs opposed the motion, countering that his "private, obscure webpage reveals nothing that is protectible" and he had not misused any of Sherwin-Williams' intellectual property or revealed any of its confidential or proprietary trade secrets.

{¶ 6} A hearing on the motion was converted to an in-person status conference in April 2025. After off-the-record discussions concluded, the trial court

scheduled a settlement conference for May 27, 2025; received a proposed order from the parties reflecting the agreement they entered in the interim; and adopted that order on May 1, 2025. The order stated: "Combs shall remove [Sherwin-Williams'] information from his website and shall not otherwise disclose such information prior to the Settlement Conference scheduled for May 27, 2025. All pending motions are held in abeyance pending the outcome of the Settlement Conference."

{¶ 7} Five days later, Sherwin-Williams filed a motion to show cause, claiming that Combs had not removed the information from his website despite the trial court's order. Sherwin-Williams requested an order requiring Combs to show cause as to why he should not be held in contempt of court for his refusal to comply.

{¶ 8} Combs, by and through counsel, filed a brief in opposition to the motion along with an affidavit executed by Combs. Therein, counsel acknowledged that the parties "direct[ed] their attention towards resolution" at the April 2025 status conference, Combs agreed to remove certain portions of his website, and the May 1, 2025 "order was meant to maintain the status quo through the settlement conference." Combs' counsel claimed that portions of the website were placed under password protection to maintain that status quo and Sherwin-Williams had not provided "a revamped markup of [Combs'] webpage that removes whatever they believe is a trade secret and to explain why." Accordingly, Combs' counsel argued that the show-cause motion should be denied and the parties should work in good-faith toward settlement.

{¶ 9} The next day, Combs' attorney filed a notice of mandatory withdrawal of counsel, later followed by a motion to withdraw under Cuyahoga C.P., Gen.Div., Loc.R. 10(C). In his notice, counsel advised that statements made in his brief in opposition appeared to be incorrect, explaining that Combs' webpages were password protected at times — but not continuously — since the May 1, 2025 order. Sherwin-Williams filed a reply to the brief in opposition, arguing that counsel's notice confirmed that Combs was "blatantly disregarding" the trial court's order.

{¶ 10} Combs, acting pro se, then filed several notices and motions, including a notice of self-representation and motion to substitute his own brief in opposition with the one previously filed by counsel since he disagreed with counsel's strategy. In his brief in opposition to the show-cause motion, Combs argued that the May 1, 2025 order was "not a judicial ruling" because it was not the result of a hearing or adjudication, contained no findings of fact or conclusions of law, and was entered without his consent or participation. Combs asserted that "[t]he entry appear[ed] to reflect a negotiated statement between [Sherwin-Williams'] counsel and [his] former attorney made outside [of Combs'] presence and without [his] consent."

{¶ 11} Combs further argued that Sherwin-Williams "failed to identify any legally protected information" disclosed on his website and their motion was a "strategy . . . to gesture at legal authority without undertaking the legal work required to assert it" since they had not "filed a civil complaint, proven a category of protected content, or secured any judicial ruling based on evidence." Combs

claimed that enforcement of the May 1, 2025 order "would constitute a prior restraint" since Sherwin-Williams sought to "silence protected speech without proving that the content in question falls within any legally recognized exception to First Amendment protection." Finally, Combs asserted that there was no evidence of his willful noncompliance with the May 1, 2025 order and he was "entitled to relief from procedural abuse."

{¶ 12} On May 27, 2025, the parties, including Combs' counsel, appeared for the scheduled settlement conference. However, Combs — who previously filed a motion to cancel the settlement conference; a notice objecting to his counsel's "unnecessary appearance"; and a notice establishing that he (1) would appear "solely to preserve the record," (2) had "filed all relevant motions and objections," and (3) did "not consent to offering oral argument, engaging in informal discussion, or participating in any unscheduled or off-the-record adjudication of matters not formally noticed as hearings" — exited the courtroom upon its commencement. The trial court requested that Combs' counsel ask him to return; however, Combs did not reappear for the remainder of the proceeding. Accordingly, the settlement conference did not proceed and was reset for the following day. The trial court granted Combs' counsel's motion to withdraw and Combs' motion to approve withdrawal of counsel and recognize his pro se representation. The trial court then ordered all parties to appear at the May 28, 2025 settlement conference and advised that if a settlement was not achieved, the matter would proceed to hearings on Sherwin-Williams' pending motions.

{¶ 13} Following the conference, Combs filed a "clarification of doctrines relevant to the motion to show cause." Therein, Combs argued that the information Sherwin-Williams sought to protect did not amount to trade secrets, confidential work product, or intellectual property.

{¶ 14} The next day, a settlement conference was held. The matter was not resolved, and hearings were held on Sherwin-Williams' motion to show cause and motion for temporary restraining order and preliminary injunction. First, Sherwin-Williams presented arguments regarding its motion to show cause, claiming that Combs never removed or password protected any information on his website despite the May 1, 2025 order requiring him to do so and counsel's original objection stating otherwise. Sherwin-Williams also countered Combs' pro se objection to the show-cause motion, addressing Combs' challenges to the trial court's authority and the constitutionality of the May 1, 2025 order and citing caselaw in support of its contentions. Sherwin-Williams argued that the court had an absolute right to temporarily or permanently enjoin an individual from disclosing trade secrets or confidential and proprietary information, which did not qualify for protection against prior restraint under the First Amendment. Sherwin-Williams further argued that a constitutional violation could not arise from the trial court's enforcement of an agreement between the parties, neither of whom were state actors. Finally, Sherwin-Williams asserted that Combs provided no justification for his violation of the May 1, 2025 order and requested that sanctions be issued.

{¶ 15} When given the opportunity to respond, Combs replied, "No response." Before proceeding to a hearing on Sherwin-Williams' motion for a temporary restraining order and preliminary injunction, the trial court inquired whether anything further needed to be addressed related to the motion to show cause. Combs responded in the negative and later indicated that he wanted the trial court to consider his written response to the motion and did not wish to say anything for the record.

{¶ 16} Ultimately, the trial court granted both motions and found Combs in contempt of court for his failure to comply with the May 1, 2025 order. In so ruling, the trial court concluded that "[t]his was a flagrant disregard of an order that was issued on May 1st after the parties agreed to this . . . and the agreement was entered into . . . ." The trial court further noted in its entry that it took Combs' multiple filings into consideration and found that he failed to provide any evidence or argument that excused his noncompliance. The trial court sanctioned Combs with a $25 per diem penalty from May 1, 2025, through May 28, 2025.

{¶ 17} Combs appealed both the contempt order and the order granting Sherwin-Williams' motion for temporary restraining order and preliminary injunction ("preliminary injunction order"). In response, Sherwin-Williams filed a motion to dismiss the appeal in part, arguing that the preliminary injunction order was not a final appealable order within the meaning of R.C. 2505.02(B). This court granted Sherwin-Williams' motion, partially dismissed the appeal, and notified the parties that the appeal would proceed as to the trial court's contempt order only. In

addition to several pro se motions — many of which were stricken — Combs filed an appellate brief, raising four assignments of error for review.

**Assignment of Error No. 1**

The trial court erred in issuing and enforcing a preliminary injunction without complying with Civ.R. 65(B).

**Assignment of Error No. 2**

The trial court violated [Combs'] due process rights by failing to provide notice and a meaningful opportunity to be heard before finding contempt.

**Assignment of Error No. 3**

The trial court's orders were unconstitutionally vague and improperly delegated judicial authority to Sherwin-Williams.

**Assignment of Error No. 4**

The contempt finding is void because it rests on a void order.

## II.  Law and Analysis

{¶ 18} As an initial matter, we discuss civil-contempt orders and our standard of review.  "'Contempt is defined as a disregard of, or disobedience to, an order or command of judicial authority.'"  *S.R. v. S.R.*, 2023-Ohio-531, ¶ 14 (8th Dist.), quoting *Palnik v. Crane*, 2019-Ohio-3364, ¶ 54 (8th Dist.).  Courts have long recognized that "[c]ivil contempt, as distinguished from criminal contempt, is a sanction designed to enforce compliance with a court order or to compensate for losses or damages sustained by reason of noncompliance."  *Id.*, citing *Pugh v. Pugh*, 15 Ohio St.3d 136, 140 (1984), citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949).

**{¶ 19}** To establish contempt of court, the moving party must prove by clear and convincing evidence that (1) a court order exists, (2), the nonmoving party had knowledge of the order, and (3) the nonmoving party violated the order. *Id.* at ¶ 15. Once a prima facie case is established, the burden shifts to the nonmoving party to either rebut the initial contempt showing or establish an affirmative defense by a preponderance of the evidence. *Id.* at ¶ 18. A trial court's order holding a person in contempt is reviewed on appeal for an abuse of discretion. *Id.* at ¶ 11. An abuse of discretion "'implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *Blue v. Bur. of Workers' Comp.*, 2023-Ohio-3481, ¶ 10 (8th Dist.), quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶ 20}** Next, we turn to Combs' assignments of error. Combs' first, third, and fourth assignments of error challenge the contempt order by attacking the May 1, 2025 order on which it is premised. Therefore, we address them together.

**{¶ 21}** In his first and third assignments of error, Combs argues that the May 1, 2025 order is void because it failed to meet the requirements established by Civ.R. 65, which governs temporary restraining orders and injunctions. Specifically, Combs claims that the May 1, 2025 order was issued absent any notice or hearing; lacked specificity and was unconstitutionally vague; provided no findings, definitions, boundaries, or reasons for its issuance; and failed to articulate the acts restrained. In his fourth assignment of error, Combs argues that the contempt order must be vacated because it is premised on a "void or transparently invalid" order.

{¶ 22} Sherwin-Williams counters that Combs' arguments are based on the flawed premise that the May 1, 2025 order was a temporary restraining order or preliminary injunction; rather, the order reflected a compromise between the parties, whereby Sherwin-Williams agreed to hold its motion for a temporary restraining order and preliminary injunction in abeyance in exchange for Combs' promise to remove its information from his website while the parties explored a potential settlement. Sherwin-Williams asserts that Combs negotiated, agreed to, and was bound by the May 1, 2025 order. After thorough review of the record before us, we agree with Sherwin-Williams and find Combs' argument to be without merit.

{¶ 23} An "agreed order" or "consent order" is based upon the agreements reached by the parties and is considered a contract between those parties as well as an order of the court. *State v. Powell*, 2024-Ohio-4923, ¶ 41 (2d Dist.), citing *State ex rel. DeWine v. Washington Court House*, 2014-Ohio-3557, ¶ 15 (12th Dist.), and *State ex rel. DeWine v. Miller*, 2011-Ohio-2107, ¶ 17 (4th Dist.). Parties are bound to comply with orders they agreed to, and such orders are enforceable by courts. *Id.*, citing *Infinite Sec. Solutions, L.L.C. v. Karam Props. II*, 2015-Ohio-1101, ¶ 27. Moreover, courts have held that "'[i]t is beyond question that a duly authorized attorney may enter into an agreed judgment entry[,] the terms of which will be binding on his or her client.'" *Oberst v. Oberst*, 2009-Ohio-13, ¶ 56 (5th Dist.), quoting *McGee v. McGee*, 2006-Ohio-4417, ¶ 11 (9th Dist.).

{¶ 24} The record reveals that the May 1, 2025 order was, in fact, an agreed order. After an in-person status conference was held in April 2025, the trial court

received a proposed order from the parties. Based on the record before us, this proposed order — which was adopted by the trial court on May 1, 2025 — reflected the terms of an agreement entered into by the parties at the status conference "to maintain the status quo" until a settlement conference was held later that month. This arrangement was referenced in Sherwin-Williams' filings and Combs' brief in opposition to the contempt motion filed on his behalf by counsel. The arrangement was further confirmed by the trial court during the May 28, 2025 proceedings.

{¶ 25} Combs claims that he was excluded from the status conference and his "coerced attorney['s]" approval of the order should not be akin to his consent. However — despite numerous filings and the opportunity to offer testimony and present evidence at the show-cause hearing — Combs presented no evidence that he was unaware of his counsel's strategy for the status conference or the May 1, 2025 order issued thereafter. Nor did Combs offer any evidence to establish that he did not approve of or agree to that strategy or the conditions set forth in the order. Without any testimony or evidence indicating that his attorney was not authorized to enter into such an agreement at the status conference or that Combs had no knowledge of the May 1, 2025 order, we decline to find that Combs was not bound by its terms. Since Combs did not challenge the allegation that he "blatantly disregard[ed]" the terms of the May 1, 2025 order by failing to remove any information from his website or otherwise rebut Sherwin-Williams' initial showing of contempt, the trial court did not abuse its discretion when it found Combs in

contempt of court. Accordingly, Combs' first, third, and fourth assignments of error are overruled.

{¶ 26} Finally, we review Combs' second assignment of error. Combs asserts that the trial court violated his due-process rights by failing to provide notice and a meaningful opportunity to be heard before finding him in contempt of court. Combs' misguided arguments focus primarily on the April 2025 status conference that resulted in the May 1, 2025 order. However, the contempt order was issued after the May 28, 2025 hearing, at which Combs represented himself pro se.

{¶ 27} In civil-contempt proceedings, alleged contemnors are entitled to the rights afforded to them in civil actions, including the right to due process. *Cleveland v. Bright*, 2020-Ohio-5180, ¶ 24 (8th Dist.); *Sansom v. Sansom*, 2006-Ohio-3909, ¶ 26 (10th Dist.) ("Due process must be observed in both civil and criminal contempt proceedings."). "'Due process requires that the alleged contemnor has the right to notice of the charges against him or her, a reasonable opportunity to defend against or explain such charges, representation by counsel, and the opportunity to testify and to call other witnesses, either by way of defense or explanation.'" *Sansom* at ¶ 26, quoting *Turner v. Turner*, 1999 Ohio App. LEXIS 2329, *7 (10th Dist. May 18, 1999); R.C. 2705.03.

{¶ 28} We also note that "'pro se litigants are presumed to have knowledge of the law and legal procedures and . . . are held to the same standards as litigants who are represented by counsel.'" *State ex rel. Fuller v. Mengel*, 2003-Ohio-6448, ¶ 10, quoting *Sabouri v. Ohio Dept. of Job & Family Servs.*, 145 Ohio App.3d 651,

654 (10th Dist. 2001). Indeed, "'[p]ro se litigants are not entitled to greater rights, and they must accept the results of their own mistakes.'" *Fazio v. Gruttadauria*, 2008-Ohio-4586, ¶ 9 (8th Dist.), quoting *Williams v. Lo*, 2008-Ohio-2804, ¶ 18 (10th Dist.).

{¶ 29} Our review of the record reveals that Sherwin-Williams' motion to show cause was filed five days after the May 1, 2025 order and served by the trial court's electronic filing system. Combs' counsel filed a brief in opposition to the motion before Combs began representing himself pro se. Combs filed several notices and motions, including a motion to substitute his own brief in opposition for that of his former counsel. In his pro se brief in opposition, Combs raised several arguments challenging Sherwin-Williams' motion to show cause.

{¶ 30} The record further reveals on May 27, 2025, the parties — including Combs' counsel — appeared for the previously scheduled settlement conference. Combs exited the courtroom upon its commencement and never reappeared despite the trial court and his counsel's efforts to encourage his participation. The trial court reset the settlement conference for the next day, requiring all parties to appear and advising that hearings would be held on Sherwin-Williams' pending motions — including its motion to show cause — if a settlement was not reached. In the interim, Combs filed a "clarification of doctrines relevant to the motion to show cause."

{¶ 31} Combs was present at the May 28, 2025 settlement conference and represented himself pro se. After it was clear a settlement could not be negotiated, hearings were held on Sherwin-Williams' motion to show cause and motion for

temporary restraining order and preliminary injunction. After Sherwin-Williams presented arguments in support of its motion to show cause, Combs offered no response. Rather, Combs chose to rely on his filings and declined to present further arguments or evidence to rebut the contempt showing or establish an affirmative defense. In its contempt order, the trial court noted that it considered these filings and found that Combs failed to provide any evidence or argument that excused his noncompliance with the May 1, 2025 order.

{¶ 32} Based on this record, we cannot say that Combs' due-process rights were violated. Combs — who was initially represented by counsel but elected to proceed pro se — had (1) notice of Sherwin-Williams' motion to show cause; (2) a reasonable opportunity to defend against or explain the allegations raised therein, both in writing and at the show-cause hearing; and (3) the opportunity to testify and to call other witnesses in his defense or to offer an explanation for his failure to comply with the May 1, 2025 order. Accordingly, Combs' second assignment of error is overruled.

{¶ 33} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

LISA B. FORBES, P.J., and
EILEEN A. GALLAGHER, J., CONCUR